**CITY OF KIRKWOOD, a Municipal Corporation, Appellant,**

v.

**UNION ELECTRIC COMPANY, a Corporation, Appellee.**

No. 81–1521.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1981.

Decided March 4, 1982.

Rehearing and Rehearing En Banc Denied March 31, 1982.

Charles F. Wheatley, Jr., argued, Don Charles Uthus, James Howard, Peter A. Goldsmith, Wheatley & Wollesen, Washington, D.C., Robert B. Hoemeke, Michael P. Casey, Evans, Hoemeke, Casey & Daly, St. Louis, Mo., for appellant City of Kirkwood.

Robert F. Schlafly, Charles G. Siebert, argued, Ann E. Buckley, Schlafly, Griesedieck, Ferrell & Toft, St. Louis, Mo., for appellee Union Elec. Co.

Before HENLEY and ARNOLD, Circuit Judges, and NICHOL*, Senior District Judge.

ARNOLD, Circuit Judge.

The plaintiff, City of Kirkwood, Missouri (Kirkwood), appeals from the District Court's order granting summary judgment

in this antitrust action to the defendant, Union Electric Company (UE). Kirkwood, which buys electricity from UE, alleges that UE violated the antitrust laws[1] primarily through creating and maintaining an anticompetitive "price squeeze." The principal issue on appeal is whether the District Court was correct in concluding that the alleged price squeeze is protected from antitrust attack by the exclusive jurisdiction of certain state and federal regulatory agencies, the filed-rate doctrine, the state-action doctrine, and the *Noerr-Pennington* doctrine. We do not agree that UE is immunized from antitrust liability by any of these doctrines, and therefore we reverse.

## I.

Kirkwood is a municipal corporation which sells electric power at retail to customers in approximately two-thirds of its geographical area. Kirkwood does not itself produce electricity, but instead buys it at wholesale from UE. UE is an electric utility which produces, transmits, and delivers electric power to both wholesale and retail customers in Missouri, Iowa, and Illinois. UE supplies all of Kirkwood's wholesale electric-power requirements and provides retail electric service to one-third of Kirkwood's area.[2]

---

\* The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Specifically, Kirkwood alleges violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976), and § 2(a) of the Clayton Act, 15 U.S.C. § 13(a) (1976), as amended by the Robinson-Patman Act. The statutes provide, in relevant part:

 Every contract, combination ... or conspiracy, in restraint of trade or commerce among the several States, ... is declared to be illegal. ...
 15 U.S.C. § 1.
 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, ... shall be deemed guilty of a felony ....
 15 U.S.C. § 2.
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to dis-

criminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them ....
 15 U.S.C. § 13(a).

2. Kirkwood and UE each have exclusive retail electric distribution rights within their respective portions of the city. The ⅔–⅓ allocation of Kirkwood's area is provided for in Kirkwood's Wholesale Electric Service Agreement with UE.

UE's wholesale and retail rates are each subject to governmental regulation. Under the Federal Power Act, 16 U.S.C. §§ 824 *et seq.* (1974), the Federal Energy Regulatory Commission (FERC)[3] regulates wholesale sales of electric power in interstate commerce, such as the sales from UE to Kirkwood. The FERC is required to ensure that all rates and charges within its jurisdiction are just and reasonable. 16 U.S.C. § 824d(a). Whenever it finds a rate to be discriminatory or preferential, it must determine and impose a reasonable rate. 16 U.S.C. § 824e(a). When a utility desires to increase (or decrease) its wholesale rates, it must file a proposed rate schedule with the FERC. Implementation of the increase may be suspended for up to seven months, 16 U.S.C. § 824d(d), (e), but if the FERC delays action on a proposal for more than seven months, it automatically goes into effect, subject to refund if the FERC later determines the increase to be unlawful.

UE's retail rates are regulated by the Missouri Public Service Commission (PSC) pursuant to Mo.Ann.Stat. ch. 393 (Vernon 1975). Like the Federal Power Act, the Missouri statute prohibits rates which are unjust, unreasonable, unjustly discriminatory, or unduly preferential. Mo.Ann.Stat. § 393.140(5). In Missouri, an increase in retail rates cannot go into effect until after the PSC approves it, but the PSC must act on rate applications no later than eleven months after filing. Mo.Ann.Stat. § 393.-150.

■ Kirkwood filed its complaint on September 1, 1977, alleging that UE violated the Sherman and Robinson-Patman Acts. Kirkwood charges that UE's wholesale rate increases in past years (particularly its

33.72% increase in 1975) in conjunction with its smaller and deferred increases in retail rates have created a "price squeeze" placing Kirkwood at a competitive disadvantage.[4] Because the wholesale rate Kirkwood paid to UE following these rate increases exceeded the retail rate paid by UE's large industrial primary service customers, Kirkwood asserts that it suffered competitive injury. Specifically, Kirkwood claims that it has been unable to attract large industrial customers to settle in its retail distributional area. In addition, Kirkwood complains that it has encountered increasing pressure to close down its electric power distribution operation and to sell or lease it to UE.

Aside from the price squeeze, Kirkwood contends UE committed several other antitrust violations, including price discrimination, maintenance of a territorial restriction, refusal to "wheel" power,[5] and refusal to set a transmission rate for Kirkwood.[6] In essence, Kirkwood's complaint charges that UE has a regional monopoly over the wholesale supply of electric power, and that UE has conspired with its affiliates primarily through the price-squeeze mechanism to eliminate the retail competition posed by small municipal utilities such as Kirkwood.

On January 23, 1978, the District Court granted UE's motion to dismiss Kirkwood's Robinson-Patman Act claim on the ground that electricity is not a commodity and that the complaint did not sufficiently allege sales occurring in interstate commerce. On July 24, 1980, Kirkwood asked the court to reconsider the dismissal, or in the alternative to allow Kirkwood to amend its complaint to correct its supposed defects. The court never ruled on Kirkwood's motion,

---

3. The Federal Power Commission (FPC) exercised regulatory control over utility rates prior to October 1, 1977, but as of that date its functions and responsibilities were transferred to the FERC and the Secretary of Energy.

4. A price squeeze occurs when a vertically integrated company which has monopoly power at the wholesale level but faces competition at the retail level sets its wholesale rates so high that its wholesale customers will be unable to compete with it in the retail market. See *United States v. Aluminum Co. of America*, 148 F.2d 416, 436–48 (2d Cir. 1945).

5. "Wheeling" power refers to transmitting power sold by one utility to another over the lines of a third utility not involved in the sale.

6. There is some dispute over whether any of the claims other than the price squeeze were adequately pleaded in Kirkwood's complaint. On remand, plaintiff should move for leave to amend its complaint to assert these claims clearly. "[L]eave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

but instead disposed of the entire matter on December 31, 1980, by granting UE's motion for summary judgment as to the entire complaint. This appeal followed.

## II.

■ The District Court's order granting UE summary judgment treats Kirkwood's case as resting solely on its price-squeeze allegation,[7] and indeed that is the principal basis of the complaint. The District Court decided that the price squeeze could not be the basis of antitrust liability for three reasons: (1) UE's wholesale and retail rates fall under the exclusive regulatory authority of federal and state agencies, and a court's award of antitrust damages for a price squeeze would conflict with the principle that no utility may deviate from its filed rates; (2) because UE's rates are subject to pervasive regulation, they fall within the state-action antitrust exemption; and (3) the First Amendment immunizes UE's actions in petitioning for rate increases. We respectfully disagree on each of these points.[8]

### A. *Exclusive jurisdiction and the filed-rate doctrine*

The exclusive-jurisdiction argument rests on the idea that because regulatory commissions were created to monitor the reasona-bleness of utility rates, they alone should be responsible for remedying unjust and discriminatory rates. Under this analysis, Kirkwood's sole avenue for challenging the price squeeze would be through participating in regulatory hearings on proposed rates, an avenue which has thus far yielded Kirkwood little relief.[9]

The Supreme Court has in the past held certain practices of highly regulated industries to be exempt from antitrust liability because of congressional intent, express or implied, that such industry-specific regulation supersede antitrust regulation for those industries. See, *e.g., Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963). The Federal Power Act does not contain an express antitrust exemption, but UE argues exemption should be implied from the pervasiveness of the regulatory scheme covering electric utilities. While it is true that the electric-power industry is subject to extensive government regulation, the Supreme Court has announced that "since our decision in *Otter Tail Power Co. v. United States,* [410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973),] there can be no doubt about the proposition that the federal antitrust laws are applicable to electrical utilities." *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 596 n.35, 96 S.Ct. 3110, 3120 n.35, 49 L.Ed.2d 1141 (1976).[10]

---

7. The opinion refers to the earlier dismissal of the Robinson-Patman Act claim, but does not mention any of the other alleged antitrust violations.

8. Several other courts have recently considered price-squeeze cases. The two courts of appeals and two of the three district courts faced with the issue came to the same conclusion we do, namely that a municipality's price-squeeze claim is cognizable under the antitrust laws. *City of Groton v. Connecticut Light & Power Co.,* 662 F.2d 921 (2d Cir. 1981); *City of Mishawaka v. Indiana & Mich. Elec. Co. (Mishawaka I),* 560 F.2d 1314 (7th Cir. 1977), *cert. denied,* 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978); *City of Mishawaka v. American Elec. Power Co. (Mishawaka II),* 616 F.2d 976 (7th Cir. 1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981); *Borough of Ellwood City, Pennsylvania v. Pennsylvania Power Co.,* 462 F.Supp. 1343 (W.D.Pa.1979); *City of Shakopee v. Northern States Power Co.,* Civ. No. 4–75–591 (D.Minn. Oct. 18, 1976). *Contra, City of Newark v. Delmarva Power & Light Co.,* 467 F.Supp. 763 (D.Del.1979). For a law-review article considering the price-squeeze issue in depth, see Note, *The Applicability of Antitrust Laws to Price Squeezes in the Electric Utility Industry,* 54 St. John's L.Rev. 103 (1979).

9. Kirkwood has appeared before the FERC to challenge UE's proposed wholesale rate increases, to no avail. Moreover, once the FERC approves rate increases, it has no power to invalidate rates retroactively or order other relief if the rates are later found to be unreasonable. 16 U.S.C. § 824d(e). In addition, FERC cannot remedy Kirkwood's problem on its own. Neither it nor the Missouri PSC has jurisdiction over the relationship as such between wholesale and retail rates. It is this relationship, rather than the unreasonableness of either the wholesale or the retail rate structure standing alone, that creates the problem of which Kirkwood complains.

10. In *Otter Tail* the Supreme Court held a utility's refusal to wheel subject to antitrust challenge, and in *Cantor* the Court denied antitrust

As the *Cantor* opinion recognizes, past precedent cautions that the courts should be reluctant to imply antitrust immunity. See 428 U.S. at 597, 96 S.Ct. at 3120. "Repeals of the antitrust laws by implication from a regulatory statute are strongly disfavored, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions." *United States v. Philadelphia National Bank*, 374 U.S. 321, 350–51, 83 S.Ct. 1715, 1734–35, 10 L.Ed.2d 915 (1963) (footnotes omitted). Furthermore, " '[r]epeal is to be regarded as implied only if necessary to make [the regulatory statute] work, and even then only to the minimum extent necessary.' " *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 683, 95 S.Ct. 2598, 2611, 45 L.Ed.2d 463 (1975) (quoting *Silver v. New York Stock Exchange, supra*, 373 U.S. at 357, 83 S.Ct. at 1738).[11]

The Supreme Court applied these principles to the electric-power industry in *Otter Tail* and in *Cantor* and concluded that the electric-utility regulatory scheme [12] and the antitrust laws are not "plainly repugnant" to one another. On the contrary, the regulatory and antitrust provisions are complementary to a degree. They share the common goal of eliminating unjust and discriminatory prices, though their ranges of authority and remedies differ. With respect to the case at bar, the FERC and PSC each has authority over only one end of the alleged price squeeze, while the antitrust laws can address the entire problem. In *FPC v. Conway Corp.*, 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976), the Supreme Court directed the FERC to consider potential anti-competitive effects of price squeezes when evaluating proposed wholesale-rate increases, but *Conway* does not hold that the FERC has exclusive jurisdiction over price squeezes.[13] Enforcing the antitrust laws is not the FERC's paramount objective, and the only remedy the FERC can grant is to reduce the wholesale price to the lower end of the "zone of reasonableness," 426 U.S. at 279, 96 S.Ct. at 2004 (quoting *Conway Corp. v. Federal Power Comm.*, 510 F.2d 1264, 1274 (D.C.Cir. 1975)), which, depending on where the retail price is set, may or may not be enough to eliminate a price squeeze. Prior to *Conway*, the FERC refused to take price squeezes into account because of its inability to control retail rates. *Conway* does not change the fact that neither the FERC nor the PSC can exercise jurisdiction over the entire price-squeeze situation.

█ We conclude that the FERC and PSC do not have exclusive jurisdiction over Kirkwood's price-squeeze claim. Nonetheless, UE asserts that even if the goals of the antitrust and utility regulatory schemes are complementary, the potential remedies conflict. According to UE, Kirkwood may not receive antitrust damages based on the price squeeze because such an award would contravene the filed-rate doctrine, which "forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall (Arkla)*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981) (state court could not award damages in breach-of-contract action based on a rate never filed with the FERC).[14] This doc-

immunity to a utility which distributed "free" light bulbs to residential consumers. The plaintiff in *Cantor*, who sold light bulbs at retail, claimed that tying the distribution of a non-monopoly item (light bulbs) to a monopoly item (electricity) constituted illegal use of monopoly power to restrain competition. Although Detroit Edison's light-bulb-exchange program was part of an approved tariff and therefore could not be altered without the approval of the Michigan Public Service Commission, the Court refused to imply immunity on that basis.

11. This Court recently summarized these and other implied-immunity cases in *Sound, Inc. v. American Tel. & Tel. Co.*, 631 F.2d 1324, 1327–31 (8th Cir. 1980) (no implied immunity for telecommunications industry under the Federal Communications Act of 1934).

12. *Otter Tail* considered federal utility regulation, while *Cantor* was concerned with state regulation of electric utilities.

13. *See Mishawaka I*, 560 F.2d at 1319 ("Nothing in the Supreme Court's opinion in *Conway* suggests exclusive jurisdiction . . .").

14. Although *Arkla* demonstrates the current vitality of the filed-rate doctrine, the case is clearly distinguishable from the facts of the instant case. In *Arkla*, the Supreme Court faced a conflict between state contract law and

trine was applied in an antitrust context in *Keogh v. Chicago & Northwestern Railway*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922) (shipper could not recover antitrust damages based on illegal combination of carriers to fix rates where rates approved by ICC).

▮ The filed-rate doctrine does not preclude antitrust liability in the case at bar. An award of antitrust damages for a price squeeze would not conflict with the doctrine's purpose, which is to ensure rate uniformity by confining the authority to oversee the reasonableness of rates to a single regulatory agency. See *Arkla*, 101 S.Ct. at 2930. In *Arkla*, the plaintiffs directly attacked rates which a regulatory agency had found to be reasonable, and the Supreme Court resolved the conflict in favor of the agency's determination of reasonableness. In contrast, Kirkwood does not quarrel with the reasonableness determinations of the FERC and PSC as to any individual wholesale or retail rate. Instead, Kirkwood complains of anti-competitive effects resulting from the interaction of rates which, taken separately, may be reasonable. As discussed above, neither the FERC nor the PSC has plenary authority over the interaction of wholesale and retail rates, because each commission can affect only one category of those rates. Thus, neither an award of antitrust damages nor the granting of properly conditioned injunctive relief for the price squeeze would interfere with either commission's regulatory authority. The Seventh Circuit adopted this analysis in *Mishawaka I*:

> If plaintiffs prove their case, instead of interfering with any rates approved by the Federal Power Commission, in addition to possible damages, the district court would presumably order defendant to file a new wholesale rate application that would remove the disparity between the rates charged plaintiffs and defendant's industrial customers. The court would thus not be awarding a remedy

that would "starkly conflict with the explicit statutory mandate of the Federal Power Commission * * * [or] improperly preemp[t] the jurisdiction of the Federal Power Commission * * *."

> ... [I]t would not disrupt the regulatory process to award damages for any past anti-competitive conduct proved at trial.

560 F.2d at 1323–24 (quoting *Otter Tail*). In sum, the courts may consider a price-squeeze claim without infringing on the regulatory jurisdiction of the FERC and PSC, because the question is not whether the rates themselves are anti-competitive, but whether the defendant utility acted illegally in proposing a certain anti-competitive combination of rates.

▮ Another consideration bolsters our conclusion that the filed-rate doctrine does not apply. The Third Circuit noted in *Essential Communications Systems, Inc. v. American Telephone & Telegraph Co.*, 610 F.2d 1114, 1121 (3d Cir. 1979) that the doctrine was created to protect customers, not competitors. "[T]he filed tariff rule has little or nothing to do with AT&T's duties under the antitrust laws toward its competitors ...; competitors are not the intended beneficiaries of that rule of public utility regulation." See also *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 487 F.Supp. 942, 951 (S.D.N.Y.1980). Kirkwood alleges that it has been injured as a competitor, not as a customer, though it stands in both relations to UE. A rule formulated to ensure uniformity of rates as between customers should not give an unfair advantage to a utility in its dealings with competitors.

### B. State action

The District Court's second ground for granting summary judgment was that UE's wholesale and retail sales are immune to antitrust challenge under the state-action exemption articulated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315

federal rate regulation and decided that the latter preempted the former. "[U]nder the filed rate doctrine, when there is a conflict between the filed rate and the contract rate, the filed rate controls." 101 S.Ct. at 2933. Here

we have a claimed conflict between federal rate regulation and federal antitrust regulation, and Supremacy Clause considerations do not come into play when a court balances competing federal rules.

(1943). *Parker* involved an antitrust challenge to an agricultural marketing program in California which the state designed to stabilize market prices for commodities, including raisins. The Supreme Court held that Congress did not intend the Sherman Act "to restrain a state or its officers or agents from activities directed by its legislature." 317 U.S. at 350–51, 63 S.Ct. at 313–14.

■ Subsequent cases interpreting *Parker* make clear that the state-action antitrust exemption does not encompass all action taken under color of state law. For example, in *Cantor v. Detroit Edison Co., supra*, the fact that the defendant utility's light-bulb-exchange program was contained in an approved tariff and therefore could not be continued without the regulatory commission's permission did not confer antitrust immunity on the utility. The Supreme Court found that Michigan's regulatory policy was neutral with regard to whether such a program should exist. Considering this regulatory neutrality in conjunction with the fact that Detroit Edison itself contributed substantially to the decision to adopt the program, the Supreme Court decided Detroit Edison should be held responsible for any resulting violation of the Sherman Act. "[N]otwithstanding the state participation in the decision, the private party exercised sufficient freedom of choice to enable the Court to conclude that he should be held responsible for the consequences of his decision." 428 U.S. at 593, 96 S.Ct. at 3118.

■ More recently, in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Supreme Court set forth two criteria for applying the state-action exemption. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the States itself." 445 U.S. at 105, 100 S.Ct. at 943 (quoting *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (plurality opinion of Brennan, J.)). UE's alleged price squeeze does not satisfy either of the *Midcal* criteria.[15] First, while in *Midcal* the Court found an affirmative legislative policy to permit resale price maintenance (which was the challenged restraint), here the legislative policy does not authorize or encourage the challenged anticompetitive price squeeze. Instead, the FERC and PSC are both enjoined to seek out and eliminate discriminatory prices. Second, while UE's individual wholesale and retail rates are "actively supervised" by the FERC and PSC, Kirkwood challenges the interrelation of those rates, which is under the authority of neither Commission. Although under *Conway*, the FERC is supposed to consider price-squeeze claims, given its limited power and disposition[16] to remedy them, its consideration of such claims hardly amounts to "active supervision."

### C. *Noerr-Pennington*

■ The district court's third reason for granting UE summary judgment was that

**15.** This Court in a recent review of the state-action doctrine concluded that the following factors are relevant to a determination of whether the exemption applies:

the existence and nature of any relevant statutorily expressed policy; the nature of the regulatory agency's interpretation and application of its enabling statute, including the accommodation of competition by the regulator; the fairness of subjecting a regulated private defendant to the mandates of antitrust law; and the nature and extent of the state's interest in the specific subject matter of the challenged activity.

*Sound, Inc. v. American Tel. & Tel. Co.*, 631 F.2d at 1334. Because we find *Cantor* and *Midcal* to be dispositive on the issue, we do not go into all of these factors in detail.

**16.** In the briefs filed by the FERC in relation to the petitions for certiorari in *Mishawaka I* and *Mishawaka II*, the FERC expressed its view that antitrust claims (such as price squeezes) can be more effectively and appropriately tried before the courts and thus should not be considered by regulatory commissions. See Brief for United States as *Amicus Curiae, Ind. & Mich. Elec. Co. v. City of Mishawaka*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978) at 10–11; Brief for the United States and the FERC as *Amicus Curiae, American Electric Power Co. v. City of Mishawaka*, 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981) at 10.

UE's activities in filing rate requests with the FERC and PSC are protected from antitrust liability by the First Amendment under *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (concerted efforts to influence public officials shielded from Sherman Act), and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (Sherman Act does not prohibit attempts to influence passage or enforcement of laws). The *Noerr-Pennington* doctrine protects the First Amendment right to petition government authorities, but later cases demonstrate that the First Amendment does not immunize all attempts to manipulate the government for anti-competitive ends. See, *e.g., Cantor v. Detroit Edison Co., supra* (light-bulb-exchange program approved in tariff not immune to antitrust challenge); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (attempt to monopolize transportation of goods by filing suits against aspiring competitors not immune from antitrust laws).

 The facts in the instant case cannot be distinguished from those in *Cantor*, in which the Supreme Court held that "nothing in the *Noerr* opinion implies that the mere fact that a state regulatory agency may approve a proposal included in a tariff, and thereby require that the proposal be implemented until a revised tariff is filed and approved, is a sufficient reason for conferring antitrust immunity on the proposed conduct." 428 U.S. at 601–2, 96 S.Ct. at 3122–23. *Noerr* protects the right to make one's views known to the government, but *Cantor* and *Trucking Unlimited* make clear that the right may not be used as a pretext to achieve otherwise unlawful results. "If the end result is unlawful, it matters not that the means used in violation may be lawful." *Trucking Unlimited*,

404 U.S. at 515, 92 S.Ct. at 614. The *Noerr-Pennington* doctrine will not protect a utility which manipulates the federal and state regulatory processes to achieve anti-competitive results. It is not for expression of opinion that Kirkwood seeks to compel UE to respond in damages, but rather for UE's conduct in the market place.

### D. *Other issues*

Kirkwood argues on appeal that it raised several other antitrust issues in its complaint which the District Court should have considered before granting summary judgment. These include a Robinson-Patman Act claim (which, as noted above, the District Court dismissed prior to granting the defendant summary judgment) and claims of refusal to wheel and of territorial restriction.

With respect to the Robinson-Patman Act claim, the District Court held that Kirkwood did not sufficiently allege that the challenged sales took place in interstate commerce. Kirkwood asked for leave to amend its complaint to correct the supposed deficiency, but the District Court never ruled on the request, probably because its other holding—that electricity is not a "commodity"—was sufficient to support dismissal of the Robinson-Patman claim.

 The District Court also premised its dismissal of Kirkwood's Robinson-Patman Act claim on the proposition that "electric power is probably not considered a commodity" for Robinson-Patman purposes. *City of Kirkwood v. Union Electric Co.*, No. 77–947C(2) (E.D.Mo. Jan. 23, 1978) (memorandum accompanying order granting motion to dismiss in part). We disagree. Though the Robinson-Patman Act does not cover sales of real property,[17] intangibles, or services,[18] electricity does not fall into any of these categories. Electric power can be felt, if not touched. It is produced, sold, stored in small quantities, transmitted, and distributed in discrete quantities.[19] We

17. See *TV Signal Co. v. American Tel. & Tel. Co.*, 462 F.2d 1256, 1259 (8th Cir. 1972).

18. See *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 389 n.11 (8th Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974).

19. For a thorough analysis of the question, concluding that electric power does fall within the Robinson-Patman Act's coverage, see *City of Gainesville v. Fla. Power & Light Co.*, 488 F.Supp. 1258, 1279–83 (S.D.Fla.1980). *Contra, City of Newark v. Delmarva Power & Light Co.*, 467 F.Supp. at 772–74.

hold that electricity is a commodity for purposes of the Robinson-Patman Act. The antitrust laws should not be given a restrictive interpretation.

Because we are reversing and remanding on the price-squeeze and Robinson-Patman issues, we express no view on Kirkwood's other antitrust claims, which the District Court's opinion did not mention. The District Court should address these claims on remand.

Finally, UE argues that even if a price-squeeze claim (or, presumably, any of Kirkwood's other claims) is cognizable in antitrust, summary judgment was correctly granted because Kirkwood has failed to show either competitive injury or recoverable damages. This argument is premature. The District Court did not reach it. This case has not yet been tried, and on the state of the preliminary record before us [20] the issues of presence or extent of competition and damages cannot be conclusively determined as a matter of law.

### III.

Kirkwood's price-squeeze complaint is not precluded by the exclusive-jurisdiction, filed-rate, state-action, or *Noerr-Pennington* doctrines. We conclude that Kirkwood has stated a claim cognizable under the antitrust laws, though of course we express no views on the merits of that claim. The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

It is so ordered.

---

**20.** The record consists of discovery completed prior to the granting of summary judgment.