**FRONTIER ENTERPRISES, INC., etc., et al., Plaintiffs,**

v.

**AMADOR STAGE LINES, INC., etc., et al., Defendants.**

**Civ. No. S–83–940 MLS.**

United States District Court, E.D. California.

Oct. 2, 1985.

William L. Jaeger, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for plaintiffs.

James Duryea, Jr., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

MILTON L. SCHWARTZ, District Judge.

Defendants' motion to dismiss or, in the alternative, for summary judgment was heard on April 6, 1984, and thereafter submitted. The court has considered all of the briefs and other written materials present-ed by the parties, including recently filed supplemental briefs, as well as the oral arguments made at the April 6, 1984 hearing, and now renders it decision.

In their complaint, plaintiffs allege that defendants have contracted, combined, and conspired to unreasonably restrain interstate commerce in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and have monopolized, attempted to monopolize, and combined and conspired to monopolize interstate trade and commerce in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. Two separate lines of commerce are allegedly involved in this case: motor carrier passenger service between the Sacramento area and Northern Nevada, and tour broker service for tours which include such transportation. Plaintiffs claim that defendants "filed repetitive, overlapping and baseless protests, administrative appeals and judicial appeals, and initiated court litigation, without regard to merit, against anyone seeking ICC [Interstate Commerce Commission] authority to compete with defendants in the Sacramento area," (Complaint ¶ 21) and that defendants also "abused their monopoly in motor carrier passenger service for group casino tours in order to fix the prices paid by consumers for such tours, to gain unfair competitive advantages, and to extend their monopoly power into the above unregulated tour broker businesses through price squeezes, refusals to deal, restrictive tariffs...." (Complaint ¶ 21)

Defendants seek dismissal or summary judgment as to those claims concerning the special tariff and the protests and subsequent litigation concerning the applications of plaintiffs Quality Coach Lines, Inc. ("Quality") and Vaca Valley Bus Lines, Inc. ("Vaca Valley") for certificates of public convenience and necessity. They argue (1) that the above described allegations fail to state a claim upon which relief can be granted, (2) that this court lacks subject matter jurisdiction, and (3) that there are no triable issues of material fact.

Specifically, defendants contend that the allegations concerning the special tariff are

"defective" because (1) the Interstate Commerce Commission ("ICC") found the tariff to be reasonable, nondiscriminatory and not to unreasonably restrain competition and plaintiffs cannot relitigate the issue of reasonableness under a Sherman Act theory in this court; (2) the district court has no jurisdiction to entertain a collateral attack on an ICC decision; and (3) since the ICC approved the special tariff, defendants are immune from antitrust liability for using the tariff. With respect to the allegations regarding "sham protests," defendants urge that the ICC and the Ninth Circuit have found merit to their protests and that plaintiffs are precluded, under the doctrine of collateral estoppel, from relitigating that issue in this forum. The court will address the arguments concerning the special tariff first.

Plaintiffs allege that on January 1, 1981, defendants began using a "special tariff" under which the rates charged to plaintiff Frontier Enterprises, Inc. ("Frontier") and other tour agents were 25 percent lower than the regular published rates of defendant Amador Stage Lines, Inc. ("Amador"). Additionally, the tariff provided that "all fares sold under this tariff are net non-commissionable, and all travel arrangements must be provided by Amador Stage Lines, Inc." Plaintiffs allege that defendants used this "special tariff" for three reasons: (1) to drive tour agents and brokers, such as Frontier, out of the casino group tour business by depriving them of broker and casino commissions; (2) to subject tour agents and brokers to a price squeeze; and (3) to fix and standardize prices for casino group tours.

Before addressing the merits of the parties' arguments, the court must decide whether to treat defendants' motion as one for dismissal or summary judgment. As previously noted, defendants seek dismissal or summary judgment on the ground that the complaint fails to state a claim upon which relief can be granted (a Fed.R.Civ.P. 12(b)(6) motion) and that this court lacks subject matter jurisdiction (12(b)(1)). The court may, when considering a 12(b)(1) motion, look to matters outside the pleadings.

If, however, on a 12(b)(6) motion the court is presented with and does not exclude matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). In this case, the court has considered matters outside the pleadings, some of which are not subject to judicial notice. Therefore, except to the extent it addresses subject matter jurisdiction the motion will be treated as one for summary judgment.

As the Ninth Circuit stated in *National Industries v. Republic National Life Insurance Co.*, 677 F.2d 1258, 1265–66 (9th Cir.1982), summary judgment should be granted

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). For this purpose, all permissible inferences from the evidence must be drawn in favor of the non-moving party. *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 617 (9th Cir. 1981).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact, regardless of where the ultimate burden of proof would lie at trial. *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1320–21 (9th Cir.), *vacated on other grounds*, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981); *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir.1980); *Weisberg v. United States Dept. of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). It is not enough for the moving party to present evidence that is legally sufficient to support a judgment in its favor or, put another way, evidence upon which a reasonable trier of fact could rationally base a verdict in its favor. That formulation of the standard would ignore that a reasonable trier of fact might also construe the same evidence to support a different result. Contradictory inferences may be

drawn from undisputed evidentiary facts. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir.1978). However, summary judgment should be granted when the evidence in support of the motion would, if uncontradicted, entitle the moving party to a directed verdict were the case to proceed to trial. *Bieghler, supra,* 633 F.2d at 533; *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Neely, supra,* 584 F.2d at 344–45. Accordingly, the movant's evidence should demonstrate as a matter of law the absence of genuine issues of fact to present to the fact-finder. *Garter-Bare [Co. v. Munsingwear, Inc.], supra,* 650 F.2d [975] at 979 [ ( 9 Cir.1980) ]; *Neely, supra,* 584 F.2d at 344–45.

If that burden is satisfied, then the party opposing the motion must present sufficient evidence supporting a claimed factual dispute so as "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *British Airways Bd., supra,* 585 F.2d at 952; *Neely, supra,* 584 F.2d at 344. The non-moving party may not rest upon the mere allegations of its pleadings to resist an adequately-supported motion for summary judgment. *Castanada, supra,* 648 F.2d at 617.

The court is aware that summary judgment is not favored in antitrust cases particularly where motive and intent are at issue. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1257 (9th Cir.1982). Such relief, however, is not precluded in antitrust cases and, when properly used, is a valuable means of preserving scarce judicial resources. *Coca-Cola,* 692 F.2d at 1257.

The court turns first to the question of whether it has subject matter jurisdiction over this case. According to 28 U.S.C. § 2321:

Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title.

The Hobbs Act provides, in pertinent part, that the court of appeals' jurisdiction under section 2321 is exclusive. 28 U.S.C. § 2342. *See also Pullman-Standard, a Div. of Pullman, Inc. v. I.C.C.*, 705 F.2d 875 (7th Cir.1983). The only exception to this general grant of jurisdiction is found at 28 U.S.C. § 1336(a), which provides that district courts have exclusive jurisdiction to review ICC orders "for the payment of money or the collection of fines, penalties and forfeitures." *City of New Orleans v. Southern Scrap Material,* 704 F.2d 755, 759–60 n. 18 (5th Cir.1983); *Island Creek Coal Sales Co. v. I.C.C.*, 561 F.2d 1219 (6th Cir.1977); *Southern Pac. Transp. Co. v. California Coastal Comm'n,* 520 F.Supp. 800 (N.D.Cal.1981). Defendants argue that the allegations contained in paragraphs 24 and 26 of plaintiffs' complaint constitute a collateral attack on an order of the ICC. Plaintiffs' response is that section 2321 governs only direct review of ICC orders and that they are not seeking such review. They also note that none of the cases cited by defendants hold that an antitrust suit against a regulated carrier constitutes a collateral attack on an ICC order.

Defendants acknowledge that none of the cases cited in their moving papers "squarely holds that an antitrust suit against a regulated carrier might constitute a collateral attack on an ICC order." (Memorandum of Points and Authorities in Reply to Plaintiffs' Opposition to Summary Judgment, p. 14). They then cite *REA Express, Inc. v. Alabama Great Southern Railroad Co.*, 343 F.Supp. 851, 859 (S.D.N.Y.1972), *aff'd on appeal,* 412 U.S. 934, 93 S.Ct. 2774, 37 L.Ed.2d 393 (1973), as so holding. This court finds *REA* distinguish-

able and, therefore, not controlling. In *REA*, plaintiff was challenging only the alleged illegal issuance of securities, the very act approved by the ICC. Here, plaintiffs are challenging, *inter alia*, defendant Amador's overall rate structure which the ICC did not examine.

■ Although the court does not have the power to issue an order which would, in effect, suspend or enjoin an ICC order, it does have jurisdiction to question the validity and scope of an ICC order. *Seaboard Air Line Railroad Co. v. Daniel*, 333 U.S. 118, 122–23, 68 S.Ct. 426, 428–29, 92 L.Ed. 580 (1948); *Southern Pac. Transp. Co.*, 520 F.Supp. at 808. Based on the present record, the court is not persuaded that this action is one which is required to be brought in the court of appeals. Accordingly, this court will retain jurisdiction pending a later decision, if any, that any relief which might be granted would effectively enjoin or suspend the ICC's order.

Defendants' second contention is that they cannot be subjected to liability under the antitrust laws for using Special Tariff 52A because the ICC specifically approved the tariff as being in the public interest.

Plaintiffs' response is: (1) the special tariff cannot be considered in isolation but must be viewed in the context of the broad conspiracy alleged in plaintiffs' complaint; (2) the ICC did not approve the special tariff as being in the public interest but simply ruled there had been no violation of 49 U.S.C. §§ 11101, 10761 or 10741(a); and (3) numerous courts have found antitrust liability involving conduct ostensibly approved by the ICC following hearings. These contentions will be addressed sequentially.

■ Whether defendants' conduct is exempt from application of the antitrust laws by virtue of the ICC's actions is a question of law. *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 688, 95 S.Ct. 2598, 2614, 45 L.Ed.2d 463 (1975); *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 695 (9th Cir.1977), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d

36 (1980). The court must consider several general principles in its approach to the question. Conduct is not immunized merely because it falls within the jurisdiction of a regulatory agency. *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 596–97 n. 36, 96 S.Ct. 3110, 3120–21 n. 36, 49 L.Ed.2d 1141 (1976). Nor is immunity implied simply because the applicable regulatory standard requires the agency to give weight to antitrust policy. *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). As the Supreme Court stated in *Gordon*, 422 U.S. at 682, 95 S.Ct. at 2611 (1975): "Repeal of the antitrust laws by implication is not favored and not casually to be allowed. Only where there is a 'plain repugnancy between the antitrust and regulatory provisions' will repeal be implied."

The court has carefully considered the authorities cited by the parties and the orders issued by the ICC with the above guidelines in mind and has concluded that defendants are not immune from antitrust liability.

■ Defendants suggest that the mere fact the ICC approved the special tariff as being "in the public interest" entitles them to immunity. The court disagrees. The ICC's conclusion must be viewed in light of the issues it was addressing. Here it appears the ICC was considering three very narrow issues.

Defendants attempt to distinguish three cases cited by plaintiffs (*Borough of Ellwood City, Pennsylvania v. Pennsylvania Power Co.*, 570 F.Supp. 553 (W.D.Pa.1983); *City of Kirkwood v. Union Electric Co.*, 671 F.2d 1173 (8th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983); and *City of Mishawaka, Indiana v. Indiana & Michigan Electric Co.*, 560 F.2d 1314 (7th Cir.1977), *cert. denied*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978)), on the ground that those cases involved the interaction of two regulatory rates, which neither a federal nor state agency had full authority to regulate, whereas here "the conduct at issue was entirely within the jurisdiction of the ICC."

(Memorandum of Points and Authorities in Reply to Plaintiffs' Opposition to Summary Judgment, p. 12.) Defendants have not submitted any authority, however, which indicates that the ICC had the jurisdiction to, and did in fact, consider the overall conspiracy being alleged here, or even the alleged price squeeze involving the special tariff. Nor have defendants responded to plaintiffs' contention that Amador's counsel told the ICC Joint Board (1) that the issue whether the special tariff was anticompetitive was not before the board; (2) that Frontier could only seek damages for the alleged unlawful rates in a federal court action; and (3) that Amador's motive was not an issue. In view of the above, the court cannot find that the ICC's "approval" of Special Tariff 52A was so broad as to entitle defendants to immunity from liability under the antitrust laws.

■ Defendant Amador's next contention is that it is immune from antitrust liability under the *"Keogh"* doctrine, a rule first articulated by the Supreme Court in *Keogh v. Chicago & Northwestern Railway Co.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), to the effect that a regulated entity may not charge rates for its services other than those properly filed with the appropriate federal regulatory authority. Applying that rule to the facts of the case before it, the *Keogh* court held that a shipper could not recover antitrust damages based on an illegal combination of carriers to fix rates where the rates had been approved by the ICC.

Amador claims that this case is "on squares" with *Keogh* and therefore, because the ICC approved Special Tariff 52A, Amador cannot be held liable for antitrust damages for using the tariff. *See also Ellingson Timber Co. v. Great Northern Railway Co.,* 424 F.2d 497 (9th Cir.), *cert. denied,* 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970).

Plaintiffs argue that the *Keogh* doctrine is not applicable in this case for several reasons. First, in the case *sub judice,* unlike *Keogh,* there is no adequate remedy available to plaintiffs under the Interstate Commerce Act. Second, plaintiffs are competitors of defendants, not just customers. (In both *Keogh* and *Ellingson,* plaintiffs were customers of the defendants.) Third, the tariff is only part of a larger anticompetitive scheme. Fourth, this case involves a price squeeze. Finally, the damages claimed herein are not speculative, as was the case in *Keogh.*

The court need not address all of plaintiffs' arguments since it is satisfied that *Keogh* is not applicable in this case for the reason that plaintiffs are competitors of defendants. *City of Kirkwood v. Union Electric Co.,* 671 F.2d 1173 (8th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983); *Essential Communications Systems, Inc. v. American Telephone & Telegraph Co.,* 610 F.2d 1114, 1121 (3rd Cir.1979) ("[C]ompetitors are not the intended beneficiaries of that rule of public utility regulation."); *Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 600 F.Supp. 859 (N.D.Ohio 1983).

The next argument advanced by defendants is that because the ICC approved Special Tariff 52A plaintiffs are collaterally estopped from relitigating issues relating to it. Plaintiffs contend that collateral estoppel does not apply because (1) the ICC's decision concerned three narrow issues which are not relevant herein, and (2) plaintiffs were denied due process during the ICC hearing. Plaintiffs also point out that in the state court action between Amador and Frontier, Amador's motion for summary judgment based on collateral estoppel was denied.

■ In determining, first, whether the state court decision has preclusive effect, this court is required by 28 U.S.C. § 1738 to look initially to state preclusion law. *Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). Under California law, three questions must be answered in the affirmative in order for collateral estoppel to apply. They are: "(1) Was the issue

decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? and (3) Was the party against whom the plea [of res judicata or collateral estoppel] is asserted a party or in privity with a party to the prior adjudication?" *Hone v. Climatrol Industries, Inc.*, 59 Cal.App.3d 513, 529, 130 Cal.Rptr. 770 (1976); *see also, Aguilar v. Los Angeles County*, 751 F.2d 1089, 1092 (9th Cir. 1985); *Bernhard v. Bank of America*, 19 Cal.2d 807, 813, 122 P.2d 892 (1942). In the state court action there was no final judgment; accordingly, collateral estoppel does not apply and this court is not bound by the state court's decision.

The court considers next the effect of the decision made by the ICC. It is clear that administrative agency determinations can have collateral estoppel effect. *Tipler v. E.I. duPont deNemours and Co.*, 443 F.2d 125, 128 (6th Cir.1971); *see also Martin v. Donovan*, 731 F.2d 1415 (9th Cir.1984). In this case the court is satisfied that plaintiffs' claim of denial of due process is barred by application of collateral estoppel. It is not persuaded, however, based on the present record, that plaintiffs' claims respecting Special Tariff 52A are barred.

■ Plaintiffs argue to this court that they were denied due process in the hearing before the ICC because (1) they were cut off on cross-examination or not permitted to present evidence which they deemed important and relevant to their case; (2) Amador's counsel had a conflict of interest because he had previously represented plaintiff Vaca Valley on matters relevant to the case before the ICC; and (3) Amador's counsel made references to David Lippincott, president of Frontier, in a highly improper manner. The decision of the review (appellate) board indicates that Frontier raised at least some of these contentions in its appeal from the decision of the joint board (trial tribunal). (The conflict of interest issue was *not* mentioned in the review board's order, however. Amador claims that the issue was not raised.) After the review board affirmed the joint

board's decision, Frontier filed a petition for review with the Ninth Circuit, but the parties later stipulated to a voluntary dismissal of that petition. This court finds that plaintiffs have waived their due process arguments, and that they are collaterally estopped from raising them in this litigation. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) ("Nor are the res judicata consequences of a final unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.")

■ The fact that the court has found that collateral estoppel bars relitigation of plaintiffs' due process claims does not mean that a similar conclusion must be reached with respect to the ICC's ruling on Special Tariff 52A. As the Ninth Circuit recognized in *Peterson v. Clark Leasing Corporation*, 451 F.2d 1291, 1292 (9th Cir. 1971), "[t]he doctrine [of collateral estoppel] applies only to issues that are identical in both actions. Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." Just because plaintiffs dismissed their petition for review does not mean that they waived claims with respect to Special Tariff 52A. The court is not satisfied, based on the present record, that the issues decided by the ICC with respect to the special tariff are identical to those being asserted here, nor is it satisfied that the ICC used the same standards as this court would employ in reaching its conclusions. Accordingly, plaintiffs are not barred by the doctrine of collateral estoppel from asserting claims involving Special Tariff 52A.

The court turns next to the "sham" litigation arguments. Plaintiffs allege that defendants brought administrative and judicial actions to harass, deter and injure Quality, Vaca Valley, All-Cal, River City Tours, and Golden State Coaches. Defendants seek dismissal or summary judgment with respect to the allegations pertaining to Quality and Vaca Valley. The court will

address the arguments concerning each of the bus lines separately.

Defendants contend that the Ninth Circuit's decision in *Amador Stage Lines, Inc. v. United States*, 685 F.2d 333 (9th Cir. 1982), establishes that Amador's protest against Quality's application was possessed of "substantial merit" and that that decision "precludes a later, contrary finding in this case that such a protest was 'sham' as alleged by plaintiffs." (Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint, p. 20.) Defendants concede that Quality ultimately obtained operating authority but argue that this was due to a change in the law.

Plaintiffs characterize the Ninth Circuit's decision as a "minor procedural victory" for defendants (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, and Defendants' Alternative Motion for Summary Judgment, p. 49) and claim that, contrary to defendants' position, they need not demonstrate that the Quality protests were prosecuted without probable cause. Plaintiffs also argue that the ICC ultimately rejected defendants' Quality protest under both the old and new law.

■ "Under the *Noerr-Pennington* doctrine, bona fide efforts to obtain or influence legislative, executive, judicial or administrative actions are immune from antitrust liability [on the basis of the first amendment's guaranteed right to petition]." *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1294 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985) *quoting Clipper Exxpress v. Rocky Mountain Motor. Tariff Bureau, Inc.*, 690 F.2d 1240, 1251 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). "However, the immunity does not extend to so-called 'sham proceedings,' which were instituted without probable cause and in complete disregard of the law to interfere with the business relationships of a competitor." *Clipper Exxpress*, 690 F.2d at 1251–54. Whether an act is a genuine effort to influence governmental action, or a mere sham,

is a question of fact. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir.1983); *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir.1983); *Clipper Exxpress*, 690 F.2d at 1253. "[W]hile the success or failure of the protests is not singularly determinative of a party's intent, this Circuit regards such success or failure as indicative of a party's intent." *Clipper Exxpress*, 690 F.2d at 1254. *See Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 841 n. 13 (9th Cir.1980).

■ The fundamental question before this court is whether Amador's purpose in protesting was to win a favorable judgment against Quality or simply to harass it, "and deter others, by the process itself—regardless of outcome—of litigating." *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 472 (7th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983). The court is satisfied that there are triable issues of material fact which preclude granting summary judgment on this issue. Amador offered no explanation as to its purpose in seeking a temporary restraining order (TRO) from Judge Ramirez of this court while proceedings were still pending before the ICC. The request for a TRO was denied and the entire action, Civil No. S–82–966 RAR, was later dismissed with prejudice pursuant to the parties' stipulation. Amador also failed to discuss its "Emergency Petition for Further Enforcement of Court's Mandate and Mandamus" which the Ninth Circuit denied on February 7, 1983. Finally, the court rejects Amador's argument that the only reason Quality eventually obtained operating authority was because of a change in the applicable law. In its decision following remand from the Ninth Circuit, the ICC did acknowledge and discuss the applicability of the Bus Regulatory Reform Act of 1982 but it was careful to discuss the issues raised by the Ninth Circuit under the *old* law.

The court turns next to a consideration of defendants' conduct with respect to the application of Vaca Valley. Plaintiffs claim that defendants undertook several

**146**

administrative actions to prevent Vaca Valley from obtaining operating authority, and, further, that Vaca Valley did obtain permanent operating authority on March 29, 1983, one year after its initial application. Defendant Amador argues that it protested Vaca Valley's application on two grounds: (1) unfitness by reason of past and present operations without the necessary ICC certificates, and (2) common control of Vaca Valley and other entities within the jurisdiction of the ICC; that the ICC found in its favor on both issues. Amador then argues that because Vaca Valley's procedural due process rights were protected in the ICC proceedings, and because the ICC's findings as to fitness and common control were material to the administrative determination and supported by substantial evidence, application of the doctrine of collateral estoppel precludes this court from finding that Amador's protest was "sham."

Plaintiffs seem to suggest that because Vaca Valley ultimately obtained operating authority, Amador's protests must be deemed frivolous. Defendants, on the other hand, argue that because the ICC found merit in their contention that Vaca Valley had violated ICC regulations, their actions cannot be deemed "sham," as a matter of law. The court finds that the evidence before it at this time does not compel the conclusion that the actions taken against Vaca Valley were not "sham." Since conflicting inferences can be drawn from the evidence presently before the court, defendants' motion for dismissal or summary judgment must be denied as to the "sham litigation" claim involving Vaca Valley.

In light of the foregoing, IT IS ORDERED that:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied; and

2. Defendants' motion to dismiss and/or for summary judgment as to plaintiffs' claims pertaining to the special tariff and "sham litigation" against Quality and Vaca Valley is denied.