BOROUGH OF ELLWOOD CITY, PENN-
SYLVANIA, Borough of Grove City,
Pennsylvania, Municipal corporations,
Plaintiffs,

v.

PENNSYLVANIA POWER COMPANY, a
Pennsylvania corporation, Defendant.

Civ. A. No. 77–1145.

United States District Court,
W.D. Pennsylvania.

Aug. 31, 1983.

Charles F. Wheatley, Jr., Washington, D.C., Edward Leymarie, Borough Sol., Borough of Ellwood City, Ellwood City, Pa., for plaintiffs.

Steven A. Berger, New York City, Stephen Feld, James R. Edgerly, New Castle, Pa., Terence H. Benbow, New York City, Edward C. Schmidt, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

We consider Pennsylvania Power Company's second motion for summary judgment and plaintiff's motion for leave to amend the complaint. We previously considered defendant's motion to dismiss, which was treated, in part, as one for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6), in *Borough of Ellwood City v. Pennsylvania Power Company,* 462 F.Supp. 1343 (W.D.Pa. 1979). We incorporate by reference our prior opinion in this matter. For the reasons stated below, defendant's present motion will be granted in part and denied in part, and plaintiff's motion to amend will be denied.

Plaintiffs, Boroughs of Ellwood City and Grove City (hereinafter Boroughs), are municipal corporations of Pennsylvania located within the service area of defendant, Pennsylvania Power Company (hereinafter Penn Power). Plaintiffs sell electric power at retail to consumers within their respective corporate boundaries. The power that plaintiffs sell is acquired through wholesale purchases from Penn Power, as neither borough has any generation or transmission facilities. Defendant Penn Power has been a wholly-owned subsidiary of Ohio Edison Company since 1944. Penn Power directly services consumers in 137 communities and also sells energy for resale to five municipalities, including plaintiffs.

Penn Power's wholesale rates are regulated by the Federal Energy Regulatory

Commission (hereinafter FERC)[1] pursuant to the Federal Power Act, 16 U.S.C. § 824 *et seq.* (& Supp. V). Penn Power's retail rates are regulated by the Pennsylvania Public Utility Commission (hereinafter PPUC or Commission) pursuant to the Public Utility Code (hereinafter Code), 66 Pa. C.S. § 101 *et seq.*

All rates subject to FERC's jurisdiction are required to be just and reasonable and not unduly discriminatory or preferential. 16 U.S.C. § 824d(a) and (b). Penn Power is required to file schedules with FERC listing all wholesale rates, the classifications, practices and regulations affecting the rates, and all contracts relating to the rates. 16 U.S.C. § 824d(c). Pursuant to 16 U.S.C. (Supp. V) § 824d(d), Penn Power must give sixty days notice to FERC and the public before modifying its wholesale rates. In response to a complaint, or on its own initiative, FERC is empowered by 16 U.S.C. § 824d(e) to order a hearing to consider the lawfulness of a filed rate change and authorized to suspend the proposed change for a period not to exceed five months beyond the time when the rate would otherwise go into effect. If a hearing is not ordered, the new rate takes effect at the end of the sixty-day notice period. Pursuant to 16 U.S.C. § 824d(e), if a hearing is not concluded before the expiration of the suspension period, the proposed rate takes effect. Any portion of the increase subsequently determined to be unjustified is then subject to refund with interest.

Pennsylvania law requires utilities to file all tariffs, defined by 66 Pa.C.S. § 102 as all rules, regulations, practices or contracts involving any rates, with the PPUC. 66 Pa. C.S. § 1302.[2] Rates may not be preferential to any person, corporation or municipal corporation, nor may a public utility unreasonably discriminate between localities or classes of service. 66 Pa.C.S. § 1304. A retail rate may not go into effect until the

PPUC approves it. The Code mandates, as does its federal counterpart, that the utility give sixty days notice to the PPUC before changing any existing or established rate. 66 Pa.C.S. § 1308(a). Upon complaint or upon its own motion, the PPUC may order a hearing to consider the lawfulness of a proposed rate change. Absent an order permitting a proposed tariff to become effective, the proposed rate is automatically suspended for up to seven months following the sixty-day notice period. 66 Pa.C.S. § 1308(d). If an order has not been made prior to the expiration of the seven-month period, the proposed rate takes effect, subject to refund. *Id.*

Prior to October 7, 1977, the Pennsylvania Public Utility Code had no provision for giving effect to a proposed rate-change should the Commission fail to conclude its hearing and/or reach a decision within the suspension period. However, the PPUC was authorized to suspend rate increases for up to nine months. 66 P.S. § 1148(b). The rate in force at the time the proposed rate was filed remained in effect, unless the PPUC ordered that a temporary rate be collected, until the time that the Commission rendered a final decision. *Id.* The collection was subject to refund if it were greater than the subsequently approved rate. If it were less than the approved rate, a surcharge could be added. 66 P.S. §§ 1150(e) and 1153(a).

On October 4, 1977, plaintiffs filed a complaint alleging that Penn Power had violated the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Robinson-Patman Act, 15 U.S.C. § 13(a). The complaint alleges that Penn Power imposed an anticompetitive price squeeze upon Boroughs by manipulating the relationship between its wholesale rate to plaintiffs and its retail industrial rates. We stayed the rate-related aspects of Boroughs' claim until the determination of the rate

---

1. References to FERC during the time prior to October 1, 1977, should be construed as referring to the Federal Power Commission, which had essentially the same statutory authority as FERC prior to the above-noted date.

2. At the time the instant complaint was filed, the predecessor statutes to the above-cited provisions were in effect and governed public utilities' retail rates. Except where specifically noted, the provisions of the Code are substantially identical to those of the prior act.

proceedings then-pending before FERC. *Borough of Ellwood City v. Pennsylvania Power Co., supra.* Boroughs also allege in their complaint that Penn Power prevented plaintiffs from gaining access to alternative sources of power, refused to deal with Boroughs, adopted a policy of denying access by municipal electric systems to nuclear generating facilities and refused to wheel service to Boroughs. These claims were dismissed by our prior opinion. *Id.*

We initially address Boroughs' motion for leave to amend the complaint. Plaintiffs wish to amend ¶ 14 to state (A) defendant's actions, as indicated in the 1977 and 1981 docket proceedings before FERC, constitute unlawful violations of the Federal Power Act and the Sherman Act, and (B) defendant's wheeling rate filed with FERC on November 1, 1982, in response to Grove City Borough's proposed Shenango River Hydroelectric Project, constitutes an unlawful constructive refusal to wheel and refusal to deal in violation of the Federal Power Act and the Sherman Act.

█ Leave to amend pleadings out of time under Fed.R.Civ.P. 15(a) is discretionary with the trial court. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In exercising its discretion, the court may consider the following factors: undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment. *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663 (5th Cir.1981). However, there are additional considerations when a plaintiff files a motion to amend *after* the defendant has moved for summary judgment, as in the present case.[3] In such a case, the motion to amend

> will not be granted unless the party seeking amendment can show not only that the proposed amendment has "substantial merit," *Verheim v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir.1979),

but also come forward with "substantial and convincing evidence" supporting the newly asserted claim. *Artam v. International Harvester, Inc.,* 355 F.Supp. 476, 481 (W.D.Pa.1972).... This more demanding burden, which the party seeking amendment bears at this procedural juncture, evolves from the truism that "prejudice to the non-moving party is the touchstone for denial of the amendment." *Cornell & Co., Inc. v. Occupational Safety and Health Administration,* 573 F.2d 820 (3d Cir.1978).

*Carey v. Beans,* 500 F.Supp. 580, 582 (E.D. Pa.1980), *aff'd mem.,* 659 F.2d 1065 (3d Cir. 1981). The trial court's decision is not subject to reversal except for an abuse of discretion. *Heyl & Patterson International v. F.D. Rich Housing,* 663 F.2d 419 (3d Cir. 1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

█ The proposed amendment alleging violations of the Sherman Act would cause defendant to suffer undue prejudice because it would cause discovery, now completed, to begin again. We note, *infra,* that discovery in this complex case has been extensive and lengthy. Plaintiffs note, at p. 38 of their brief in opposition to the motion for summary judgment, that should the amendment be permitted, they will begin discovery concerning Penn Power's actions regarding the Shenango hydro project. To require defendant, at this late date, to begin discovery anew is indefensible. *See Roberts v. Arizona Bd. of Regents,* 661 F.2d 796 (9th Cir.1981) (Court of Appeals upheld district court's refusal to permit amendment of complaint, where the issue was raised at the "eleventh hour," after discovery was virtually complete, and the defendant's motion for summary judgment was pending before the court). *See also Mende v. Dun & Bradstreet, Inc.,* 670 F.2d 129 (9th Cir.1982). Accordingly, the motion for leave to amend the complaint is denied.

Turning to the motion for summary judgment, the allegations of the complaint pertinent to the claim of price squeeze accuse

---

**3.** Defendant's motion for summary judgment was filed February 14, 1983. Plaintiff's motion for leave to amend the complaint was filed February 18, 1983.

defendant of discriminating in price between rates applicable to municipal wholesale customers and those charged retail industrial customers. Boroughs allege that they pay more, as wholesale customers, than retail industrial customers pay for similar service. The effect of this rate differential is alleged, *inter alia,* to prevent plaintiffs from competing with Penn Power for industrial customers.

The proceedings before FERC required two separate opinions and orders because the administrative law judge had severed the price squeeze issue from the issues of cost of service, rate design and compliance. The latter were considered in Phase I, Opinion No. 89, 21 F.P.S. 5–37, issued July 18, 1980. The price squeeze claim was dealt with in Phase II, Opinion No. 157, 23 F.P.S. 5–928, issued December 21, 1982. FERC denied Penn Power's and Boroughs' requests for rehearing in Opinion No. 157–A, 24 F.P.S. 5–115, issued February 18, 1983. A petition for review has been filed. *Boroughs of Ellwood City v. FERC,* No. 83–1196 (D.C.Cir. filed February 22, 1983).

As noted above, FERC considered, in Opinion No. 157, whether Penn Power engaged in an anticompetitive price squeeze. Boroughs argued to FERC, and argue here, that the disparity between the wholesale rate they paid, and the retail rate charged to industrial customers, created a price squeeze. The effect of this alleged price squeeze was to preclude competition between Boroughs and Penn Power. In resolving this claim, FERC compared the rates of return indicated by consistent cost of service analyses of the wholesale and relevant retail rates. FERC concluded that a disparity of rates of return, which was unexplained by differences in cost factors, existed during the period from September 11, 1977, to September 1, 1978. However, FERC also determined that factual circumstances existed that justified the tolerance of the price discrimination.

As noted previously, Penn Power's retail rates are governed by the PPUC, and wholesale rates are governed by FERC. Thus, different statutes and agencies govern the rates and the dates on which changes in the rates may be implemented. This dual utility rate regulation was a significant factor in FERC's determination that the price disparity should be tolerated in the instant case.

Defendant alleged that it needed rate relief immediately to maintain its construction program. Therefore, it filed a proposed wholesale rate increase in accordance with the Federal Power Act. However, Penn Power did not simultaneously file its proposed retail rate increase with the PPUC, so that it could take advantage of the newly enacted Public Utility Code. As we noted *supra,* a change in the Code provided that when the PPUC failed to reach a decision before the expiration of the suspension period, the utility's proposed rate would take effect, subject to refund. This is a departure from the prior statute which required that either the rate in force at the time the proposed rate was filed, or a temporary rate imposed by the Commission, remain in effect until the PPUC concluded its investigation and reached a decision.

> Therefore, Penn Power's decision to delay its retail rate filing in 1977, provided it assurance of either a prompt Commission ruling on its rate application (within the seven month suspension period) or the right to implement its proposed rates in full, subject to refund, after the suspension period. Had Penn Power filed prior to October 7, 1977, it would have faced the possibility of an even longer suspension period and temporary rates thereafter that may have been substantially less than the proposed rate relief.

Opinion No. 157–A, *supra,* at 5–115–116 (footnote omitted).

FERC thus concluded that by waiting to file its retail tariff, so as to take advantage of the newly enacted Code, Penn Power actually mitigated the price squeeze. FERC reasoned that by delaying the state filing, Penn Power may have shortened the duration of the disparities in its wholesale and retail rates that would have resulted from earlier, simultaneous filings. FERC therefore held that although there was a

price squeeze for eleven and one-half months, Penn Power demonstrated mitigating circumstances that rendered the price discrimination not undue.

We are now asked to give full effect to the decision of the Federal Energy Regulatory Commission in Opinions Nos. 157 and 157–A, and thereby grant Penn Power's motion for summary judgment. Following argument on the motion and extensive research, we conclude that the motion must be denied even though FERC has decided the main issue before the court.

Penn Power cites the Supreme Court's decision in *FPC v. Conway Corp.,* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976), in which the Court concluded that FERC (then the Federal Power Commission) has the authority and the duty under the Federal Power Act to consider allegations of price squeeze in a ratemaking proceeding. The Supreme Court stated,

> The Commission thus cannot so easily satisfy its obligation to eliminate unreasonable discriminations or put aside its duty to consider whether a proposed rate will have anticompetitive effects.... The Commission must arrive at a rate level deemed by it to be just and reasonable, but in doing so it must consider the tendered allegations that the proposed rates are discriminatory and anticompetitive in effect.

*FPC v. Conway, supra,* at 278–79, 96 S.Ct. at 2004.

The *Conway* Court made it clear that FERC is empowered to determine "whether a utility's wholesale rates [are] discriminatory and noncompetitive when compared with a utility's non-jurisdictional retail rates." Note, *The Applicability of Antitrust Laws to Price Squeezes in the Electric Utility Industry,* 54 St. John's L.Rev. 103, 110 (1979) (hereinafter Note, *The Applicability of Antitrust Laws*). This relationship between wholesale and retail rates and their potential for working an anticompetitive effect is the essence of the price squeeze issue presently before us.

FERC and the parties expended considerable time and expense developing and considering this case. Discovery commenced in September, 1977, producing thousands of pages of material. The hearing before FERC lasted over four weeks, producing thousands of pages of testimony and exhibits. FERC made a thorough analysis of the relationship between the rates and the dual regulation to which Penn Power is subject. Penn Power argues that the court should not second guess FERC's determination, especially in light of its particular expertise in the areas of ratemaking and anticompetitive price squeezes. The Supreme Court's pronouncement in *Conway,* Penn argues, would be a hollow directive if this court should now undertake the identical analysis and consideration recently completed by FERC. Both parties, it is argued, will have the benefit of appellate review by virtue of the District of Columbia Circuit Court's consideration of FERC's decision on appeal.

FERC has determined that although there existed a price disparity for eleven and one-half months, it is explained and justified by the effects of dual regulation to which Penn Power is subject. Penn Power argues that the Boroughs should not be entitled to relitigate the factual or legal issues determined by FERC under the fundamental principles of issue preclusion expressed by the Restatement (SECOND) of Judgments § 27 (1980):

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*See also Deaktor v. Henner,* 517 F.Supp. 26 (N.D.Ill.1980) (District court will regard as conclusive the determination of the Commodity Future Trading Commission that the Chicago Mercantile Exchange did not violate the Commodity Exchange Act. The court had granted a stay and retained jurisdiction to permit the administrative hearing before the Commission, and granted summary judgment based upon principles of issue preclusion). Issue preclusion has not been restricted to final judgments of courts,

but has been applied, in appropriate circumstances to administrative agencies. *United States v. Utah Construction Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). There the Court stated,

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose....
>
> In the present case the Board was acting in a judicial capacity ..., the factual disputes resolved were clearly relevant to issues properly before it, and both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings. There is, therefore, neither need nor justification for a second evidentiary hearing on these matters already resolved between these two parties.

Id., at 422, 86 S.Ct. at 1560 (footnote omitted).

An oft-repeated justification for the use of issue preclusion is that the interest of the state requires that there be an end to litigation, e.g., *Reed v. Allen,* 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054 (1932). Related to this is the premise that matters once determined in an adversary action shall be deemed conclusive. The former is probably not of prime importance here. However, the latter is argued by Penn Power to be highly relevant. Defendant notes the extensiveness of discovery before FERC and the length and extent of the hearing before the federal Commission. In *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), the Court stated,

> To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Id.,* at 153–54, 99 S.Ct. at 973–74 (footnote omitted).

■ Penn Power is correct that in the proceeding before FERC, and in the present matter, the issue is identical: Whether Penn Power imposed an anti-competitive price squeeze upon Boroughs by manipulating the relationship between its wholesale rate to plaintiffs and its retail rates to industrial customers. However, applicable precedent compels our conclusion that the proceedings before FERC do not preclude our consideration of Boroughs' price squeeze claims under the antitrust laws. Initially, we rely upon our prior decision in this case. There we stated,

> [T]he mere fact that FERC may consider arguments based on antitrust concepts does not preclude later antitrust review. There is no certainty that use of the limited powers of the FERC can fully remedy an antitrust violation. Mere consideration of a claim does not rise to the level of complete disposition of the underlying violation.
>
> \*    \*    \*    \*    \*    \*
>
> [T]he actual determination of the legal structure of a price squeeze claim and its presence or absence here must remain in this court. (Citation omitted). Further, this court has remedial powers, in particular, injunctive and treble damage relief, which are not held by the FERC.

*Borough of Ellwood City v. Pennsylvania Power Co., supra,* at 1349, 1351.

Although the Third Circuit Court of Appeals has not considered this precise issue, other circuit courts have considered similar claims. In *City of Kirkwood v. Union Electric Co.,* 671 F.2d 1173 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983), the Eighth Circuit Court of Appeals reversed the district court holding, *inter alia,* that FERC did not have exclusive jurisdiction over the municipality's price squeeze claim. *Kirkwood* might be distinguished because the court did not have the benefit of FERC's ruling on the price squeeze issue and was not considering whether to accord it conclusive effect. Rather, the controversy centered over which forum had exclusive jurisdiction to hear the dispute. However, the case is

sufficiently analogous to provide guidance in our disposition of the present motion.

Similarly, in *City of Mishawaka v. Indiana & Michigan Electric Co.*, 560 F.2d 1314 (7th Cir.1977), *cert. denied*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978), the Seventh Circuit Court of Appeals considered and rejected the argument that FERC had exclusive jurisdiction over a price-squeeze claim. *Mishawaka*, like *Kirkwood*, determined that the federal courts should proceed with allegations of antitrust violations involving price-squeeze claims despite the pendency of the same allegations before FERC. Again, the *Mishawaka* court did not confront the precise issue in the present case, but it is sufficiently analogous to merit our consideration. *See also Cities of Batavia v. FERC*, 672 F.2d 64 (D.C.Cir.1982); *City of Groton v. Connecticut Light & Power Co.*, 497 F.Supp. 1040 (D.Conn.1980), *aff'd in part*, 662 F.2d 921 (2d Cir.1981); Note, *The Applicability of Antitrust Laws*, *supra.*

We think it clear that jurisdiction over the price-squeeze claim must remain in this court. As one commentator stated,

> While the considerations relevant to rate-making under the Federal Power Act may differ from those used to determine a violation of the Sherman Act, the prophylactic purposes of the schemes are the same: to curb discriminatory or anticompetitive business practices. The statutory frameworks, therefore, may complement each other. Yet, because the FERC cannot provide a remedy for injury due to the existence of a price squeeze and may be unable to prevent future occurrences, it is suggested that the sole *effective* means of redress available to municipally-owned utilities is under the antitrust laws.

Note, *The Applicability of Antitrust Laws*, *supra*, at 123 (footnotes omitted) (emphasis in original).

We conclude that issue preclusion or collateral estoppel does not apply conclusively because Congress has placed antitrust jurisdiction in the district courts and because the courts can afford relief that FERC cannot

provide. Further, we are uncertain that the mitigation found by FERC is a defense to antitrust violations. The view of the D.C. Circuit would be helpful but it may be sometime before it is available. Thus, the price-squeeze issue remains viable in this court.

However, there are portions of Boroughs' claims which are no longer viable. The claim under § 1 of the Sherman Act which alleges a combination or conspiracy in restraint of trade, and the portion of the claim under § 2 of the Sherman Act which alleges that Penn Power conspired to monopolize have not been supported by the extensive discovery that has taken place. Summary judgment as to those claims must be granted, for "[i]t is now settled that summary judgment is appropriate in those antitrust cases where plaintiffs, after having engaged in extensive discovery, fail to produce 'significant probative evidence' in support of the allegations in their complaint. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.* 513 F.Supp. 1100, 1140 (E.D.Pa. 1981), *appeal filed*, August 24, 1981 (Nos. 81–2331, 81–2332, 81–2333), *argued*, October 22, 1982. *See also Mid-South Grizzlies v. National Football League*, 550 F.Supp. 558 (E.D.Pa.1982).

■ "[T]he core requirement of § 1 of the Sherman Act ... is that there be a 'contract, combination, or conspiracy'—i.e., an agreement—in restraint of trade." *Id.*, at 1145. Boroughs' sole evidence of conspiratorial action is based upon an inference they have drawn from the fact that Penn Power is owned by Ohio Edison and the fact that the two companies have certain common directors. This supposition is clearly inadequate to establish a conspiracy under the Sherman Act. Evidence of a conspiracy does not exist simply because Boroughs represent that it does.

■ Although not limited to situations involving a conspiracy, *Higbie v. Kopy-Kat Inc.*, 391 F.Supp. 808, 810 (1975), § 1 of the

Sherman Act requires proof of concerted action. *F.T.C. v. Lukens Steel Co.,* 454 F.Supp. 1182 (D.D.C.1978). The mere fact that Penn Power and its parent corporation share some common directors, and that defendant is a member of CAPCO[4] is not sufficient evidence to show the necessary concerted action. "Unilateral action, no matter what its motivation, cannot violate § 1." *Edward J. Sweeney & Sons, Inc. v. Texaco,* 637 F.2d 105, 111 (3d Cir.1980) (citations omitted). Plaintiffs' argument is akin to the argument that mere active membership in a trade association constitutes an agreement. In *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., supra,* the plaintiffs intimated that the defendants' membership in the Electronic Industries Association of Japan, requiring as it did defendants' participation in meetings as conferees, gave rise to an inference of collusive activity. The court rejected such a claim, noting that mere membership, without more, is insufficient to give rise to an inference of conspiracy. *Id.* at 1149 and cases cited therein.

Similarly, in the present case, the mere assertion that Penn Power is a member of CAPCO, without more, is insufficient to give rise to an inference of conspiratorial conduct. "Opportunities to conspire are not probative of whether firms did in fact conspire; an opportunity to conspire will exist always." *Id.,* quoting, *Brown v. Cameron-Brown Co.,* 1980–2 Trade Cases ¶ 63,400 at p. 76,040 (E.D.Va.1980). Therefore, the claims based upon a conspiracy or combination theory under §§ 1 and 2 of the Sherman Act may not be maintained. We will grant Penn Power's motion for summary judgment as to these claims.

Finally, we deny Penn Power's motion for summary judgment concerning the Robinson-Patman Act claims as there exist disputes over material facts.

The Robinson-Patman Act prohibits discrimination in price "between different purchasers of commodities of like grade and quality.... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 13(a). Defendant first argues that its motion must be granted because electricity is not a commodity within the jurisdictional reach of the Robinson-Patman Act. It relies upon *City of Newark v. Delmarva Power & Light Co.,* 467 F.Supp. 763 (D.Del.1979), wherein the District Court of Delaware determined that "the wording of the [Robinson-Patman Act], its legislative history, and the regulation of the electric utility industry which existed at the time of the adoption of the ... Act, all suggest that 'commodity' was not intended to encompass electric power." *Id.* at 773.

We, however, agree with the Eighth Circuit Court of Appeals in *City of Kirkwood v. Union Electric Co., supra.* In *Kirkwood,* the court noted that although the Robinson-Patman Act does not cover real property, intangibles or services, electricity does not fall into any of the above classifications. "Electric power can be felt, if not touched. It is produced, sold, stored in small quantities, transmitted, and distributed in discrete quantities. We hold that electricity is a commodity for purposes of the Robinson-Patman Act. The antitrust laws should not be given a restrictive interpretation." *Id.,* at 1181–82 (footnote omitted). *See also City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258 (S.D. Fla.1980). (The court analyzed the Robinson-Patman Act's legislative history, relevant case law and the nature of electricity, and concluded that electricity is a commodity entitled to the protection of the Robinson-Patman Act.)

Penn Power argues that plaintiffs' Robinson-Patman claim is barred by FERC's finding that defendant's customer classifications are appropriate, and Opinion No. 157's conclusion that the price discrimination alleged by plaintiffs is cost justified. We

---

**4.** CAPCO consists of Ohio Edison, Penn Power, Duquesne Light, Toledo Edison and Cleveland Electric Illuminating Companies. "The group was formed in 1967 to enable the members to coordinate installation of generation and transmission in order to take advantage of economies of scale." Complaint, ¶ 5.

held, *supra,* that FERC's conclusions are not to be given preclusive effect.

■ Defendant also asserts that the sales of electric power about which plaintiffs' complain were not made "in commerce" within the meaning of the Robinson-Patman Act. Penn Power bases its argument on the fact that it is located wholly within Pennsylvania and serves only Pennsylvania customers. Thus, it contends none of its sales to customers cross state lines. We reject this argument and agree with Boroughs that intrastate sales are subject to the Robinson-Patman Act as long as the sales remain in the flow of the interstate commerce.

In a Seventh Circuit Court of Appeals case, *Dean Milk Co. v. FTC,* 395 F.2d 696 (7th Cir.1968), the court held that milk sold from processing plants located within the state, which had been mixed with milk purchased from out-of-state producers, was in commerce for purposes of the Robinson-Patman Act. *Accord Foremost Dairies, Inc. v. FTC,* 348 F.2d 674 (5th Cir.), *cert. denied,* 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965).

■ Penn Power, it is alleged, purchases electricity out-of-state which flows across state lines and is subsequently sold to plaintiffs and other customers of defendant. This is sufficient to show that Penn Power's sales of electric power cross state lines. *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

We conclude, therefore, that Boroughs' Robinson-Patman claims withstand Penn Power's attack and we deny defendant's motion as it relates to these claims.