REQUESTED BY: Senator John W. DeCamp Nebraska State Legislature 1116 State Capitol Lincoln, Nebraska 68509
Dear Senator DeCamp:
This letter is in response to your earlier correspondence in which you requested our opinion as to whether certain practices of the Nebraska Racing Commission (Commission) and the Thoroughbred Racing Association violate the antitrust laws. From subsequent conversations with members of your staff, we understand that you are contemplating legislation concerning those practices. Our conclusions regarding your questions are set forth below.
The Commission has established several rules of racing which appear to be designed to aid in the identification of horses racing in Nebraska. For example, Rule 9(14) of the Commission's rules provides that no horse shall be allowed to enter any race unless that horse is duly registered and named with the registry office of the Jockey Club of New York, and unless the certification of registration, properly endorsed to the owner, is on file with the racing secretary. Rule 9(15) provides that if a horse's name is changed, its new name shall be registered with the Jockey Club, and that horse shall not be allowed to race until such time as the new certificate of registration has been issued. The Jockey Club of New York is a private association which maintains a registry office and which registers thoroughbred horses throughout the United States.
In addition to registration through the Jockey Club, Rule 13(2)(b) of the Commission's rules provides that no horse shall be allowed to race in Nebraska unless it has been lip tattooed. Lip tattoos are placed on horses by the Thoroughbred Racing Association (TRA), a private association composed of member tracks throughout the United States. TRA charges $20.00 to tattoo a horse if that tattoo is performed at a member track, and $40.00 to tattoo a horse if the tattoo is performed elsewhere. In Nebraska, Aksarben (Omaha) and Fonner Park (Grand Island) are members of TRA. Atokad (South Sioux City) and Columbus are not. The Jockey Club recognizes only tattoos which are placed on a horse by TRA, although it is possible to register a horse with the registry office of the Jockey Club if that horse has no TRA tattoo.
You first ask, does a practice whereby the Commission requires identification tattooing of horses to be performed only by TRA constitute a violation of the Nebraska antitrust laws?
At the outset, we would note that the Commission's rules, as presently drafted, do not appear to require that identification tattooing be done only by TRA. The rules do require that a horse be registered with the Jockey Club, and that a horse be tattooed prior to that horse's qualification for entry in a race. However, the Commission's rules do not state that TRA must be the tattooing agency, and, as we understand it, the Jockey Club will register horses without a TRA tattoo. Therefore, under the present rules, it would seem that a horse owner could tattoo the horse himself, have the horse registered with the Jockey Club, and still be in compliance with the Commission's rules for entry in races. As a practical matter, we understand that Commission officials would not recognize an identification tattoo other than a tattoo placed on the horse by TRA.
Assuming that the Commission does require that all identification tattooing be performed by TRA, that arrangement would most likely be suspect as an exclusive dealing arrangement prohibited by Neb.Rev.Stat. § 59-1605 (Reissue 1978). Section 59-1605 prohibits certain contracts for sale or sales made upon the condition that the purchaser not use the goods of the seller's competitors. Section 59-1605 parallels Section 3 of the federal Clayton Act, 15 U.S.C. § 14, although the state statute is somewhat broader since it applies to services as well as to the sale of goods and other commodities. Under the apparent facts of the present situation, the Commission requirement involving tattoos by TRA does not appear to be an impermissible exclusive dealing arrangement.
For the Commission's specification of only TRA tattoos to be actionable under the express language of § 59-1605, there must either be some form of contract or agreement in force between TRA and the Commission that requires the Commission to use only TRA tattoos, or some such condition of sale imposed by TRA. Our inquiry indicates that there is no such contract or agreement between the Commission and TRA. Moreover, TRA does not condition the sale of its tattoos upon a requirement that the purchaser shall not purchase tattoos from any other provider of that service. The fact that TRA is an exclusive provider of the tattoo service is a requirement of the Commission rather than a requirement of TRA. Therefore, the situation involving the use of TRA as an exclusive tattooing agency does not appear to violate 59-1605.
It is also possible that the present situation could be characterized as a combination or conspiracy in restraint of trade or commerce in violation of Neb.Rev.Stat. § 59-1603
(Reissue 1978), or a combination or conspiracy to monopolize trade or commerce in violation of Neb.Rev.Stat. § 59-1604
(Reissue 1978). Those particular Nebraska statutes parallel portions of the federal Sherman Antitrust Act; specifically,15 U.S.C. § 1 and 15 U.S.C. § 2. To prevail under the conspiracy portions of either of those Nebraska statutes, a plaintiff must establish some form of contract, agreement or conspiracy. Contractor Utility Sales Company v. Certain-TeedProducts Corporation, 638 F.2d 1061 (7th Cir. 1981);Borough of Ellwood City, Pa. v. Pennsylvania Power Co.,570 F. Supp. 553 (D.C.Pa 1983). Federal case law construing the federal antitrust statutes applies equally to similar Nebraska antitrust statutes under authority of Neb.Rev.Stat. § 59-829 (Reissue 1978). We are unaware of any evidence which would indicate that there is any form of agreement or conspiracy between the Commission and TRA either to restrain trade or to monopolize trade in Nebraska. The Commission's decision to utilize TRA as an exclusive provider of the tattoo identification service appears to be a unilateral action which is not proscribed by § 59-1603 or by the conspiracy portion of § 59-1604.
Finally, it might be remotely possible to characterize the exclusive tattooing arrangement as an improper `tying arrangement' in violation of Neb.Rev.Stat. § 59-1603 (Reissue 1978) and Neb.Rev.Stat. § 59-1605 (Reissue 1978). A tying arrangement is an agreement whereby a party sells one product (the tying product) but only on the condition that the buyer also purchase a different product (the tied product).Northern Pacific Railway v. United States, 356 U.S. 1
(1958). In the present situation, the right to race horses in Nebraska could be considered the tying product which is tied to the purchase of an identifying tattoo from TRA. However, the Commission does not sell the right to race in Nebraska, and there is no market or trade in that right. More importantly, some circuits have held that there can be no illegal tying arrangement where the company selling the tying product has no interest in the sales of the tied product of another company. Keener v. Sizzler FamilySteak Houses, 597 F.2d 453 (5th Cir. 1979). In the present situation, the Commission has no interest in the sales of identifying tattoos by TRA.
On the basis of our analysis stated above, we therefore conclude that the Commission's requirement that TRA serve as the exclusive provider of identification tattooing does not violate our state antitrust laws. You next ask whether a practice whereby TRA charges a lesser fee to tattoo horses at its member tracks than at nonmember tracks violates the antitrust laws. Again, we have concluded that this latter practice probably can withstand antitrust challenge.
The different tattooing fees charged by TRA for tattooing services performed at its member and nonmember tracks are most open to antitrust challenge as a form of tying arrangement. In this instance, the tying product is the $20.00 reduced fee for tattooing services. Since the availability of that reduced fee appears conditioned upon membership in TRA, the tied product is membership in TRA. However, several circuit courts have indicated that a tying arrangement is unlawful only if the tying arrangement has an anticompetitive effect on the market for the tied product.See, e.g. Yentsch v. Texaco, Inc., 630 F.2d 46 (2nd Cir. 1980). In the present case, the market for the tied product is the market for membership in thoroughbred racing associations. We understand that there are no thoroughbred racing associations in competition with TRA. Therefore, since there is no market for the sale of the tied product, there can be no anticompetitive effect upon that market, and no unlawful tying arrangement. Boddicker v. Arizona StateDental Association, 680 F.2d 66 (9th Cir. 1982).
In addition to a possible tying arrangement, the differentiation in fees described in your letter could involve some form of questionable price discrimination. The applicable federal statute dealing with price discrimination is the Robinson-Patman Act, 15 U.S.C. § 13. The provisions of the Robinson-Patman Act are expressly limited to the sale of commodities. In a similar fashion, the provisions of Nebraska law pertaining to local price discrimination, Neb.Rev.Stat. §§ 59-501 et seq. (Reissue 1978), a also apply only to price discrimination in the sale of commodities. The present situation involves the sale of a service, identification lip tattooing for horses. Therefore, neither the federal nor the state price discrimination statutes would apply to the fact situation which you have presented.
In sum, it is our view that the Nebraska Racing Commission may require that lip tattooing be performed only by TRA without violation of our antitrust laws. It is also our view that TRA may charge different tattooing fees to member and nonmember tracks without violating our laws pertaining to restraint of trade.
Sincerely yours, PAUL L. DOUGLAS Attorney General Dale A. Comer Assistant Attorney General