James PITTS and Raymond Northern,
et al., Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER
CORP., et al., Defendants.

No. 84 C 6486.

United States District Court,
N.D. Illinois, E.D.

Jan. 9, 1985.

On Motion to Reconsider and Amend
March 8, 1985.

Steven M. Levin, Steven M. Levin & Associates, Stephen A. Gorman, Foran, Wiss & Schultz, Chicago, Ill., for plaintiffs.

Michael F. Rosenblum, Danuta B. Panich, Mayer, Brown & Platt, Chicago, Ill., Joanna L. Moorhead, Harold Henderson, Nat. R.R. Passenger Corp., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Presently before the court is defendants' motion to dismiss, or, in the alternative, for summary judgment. Both sides have relied on matters outside the pleadings, but this court will treat the motion as a motion to dismiss and hence only the facts of the complaint are considered (and, of course, treated as true for purposes of this motion).

### I. The Facts

Plaintiff James Pitts worked for defendant Amtrak from 1977 until he was fired on March 4, 1983. He was reinstated in 1984 and apparently still works at Amtrak. Since late 1980 or early 1981 he has been chairman of Local 2600 of the International Association of Machinists and Aerospace Workers. The complaint alleges that Pitts is a vigorous advocate of both the rights of his Local's members and the need for competency and efficiency in the 16th Street diesel shop. In line with his vigorous advocacy, he allegedly reported, on numerous occasions, instances of unfair treatment of employees and inefficient management.

Plaintiff Raymond Northern worked for Amtrak from 1980 until he was fired on July 22, 1983. During his employment he was a member of Local 794 of the International Brotherhood of Electrical Workers. Though never an officer as is Pitts, Northern allegedly supported his union and used its services in disciplinary and other proceedings.

Both plaintiffs worked at a facility known as the 16th Street diesel shop, which was managed by defendant James Brown. The other individual defendant, Michael Hagen, is Amtrak's Midwest Regional Director of Labor Relations.

The complaint alleges that defendant Brown vigorously opposed Pitts and the unions that represent 16th Street diesel shop employees. Brown allegedly plotted with unknown other Amtrak management personnel to subvert the internal system (set up by the collective bargaining agreement) of investigation and hearings designed to ensure each employee a fair hearing before discipline or dismissal. This subversion was allegedly accomplished in several ways. First, Brown and his unknown cohorts are alleged to have deliberately charged employees with unfounded infractions, so that the unfounded discipline which resulted would be considered in later disciplinary actions. Second, Brown and the unknown others are said to have controlled those who make the initial determination of guilt. Through that control, they got employees suspended without pay regardless of guilt, so that the lack of salary pending any further proceedings coerced the employee into signing an admission of guilt and a waiver of backpay. This technique of coercion was allegedly enhanced by flooding the disciplinary system with knowingly unfounded cases to increase the delay between suspension and final disposition. Finally, Brown allegedly used a lengthy appellate process "to wear down employees so that they would be more amenable to do the bidding of Defendants" (complaint, par. 22(d)).

Defendant Hagen, though responsible for reviewing (apparently on his own) the initial hearing to determine whether that hearing had been fair and impartial and

whether the evidence supported the decision and any resulting discipline, allegedly furthered the subversion of the process by improperly conferring with Brown and the unknown others and allowing them to control or take part in his decision. More generally, Hagen allegedly administered a disciplinary system that "regularly and irrationally disciplined employees innocent of all misconduct or who had committed minor infractions ... without the protection of a fair and impartial hearing mandated by statute and by the various collective bargaining agreements" (complaint, par. 25).[1]

Regarding the firing of Pitts, the complaint alleges that its immediate cause was an incident in which Pitts was properly representing two union members in a confrontation with management. Pursuant to the above-described plot, Brown was in control behind the scenes of Pitts's disciplinary hearing, and ordered Pitts fired. The complaint further alleges that several improper motives were behind his firing. Brown and Hagen allegedly harbored anti-union animus and were trying to break the union by punishing union members for union activities. Brown, Hagen and the unknown others also thought that by firing Pitts for discipline infractions they could discredit a report about to be issued by the local Productivity Council (of which Pitts was a member) which was critical of the disciplinary proceedings at the 16th Street diesel shop. Hagen reviewed the decision and upheld it. On appeal, however, the Public Law Board reversed Hagen's affirmance and ordered Pitts reinstated without loss of seniority, but refused to order back pay and accrued benefits.

Regarding Northern's firing, the complaint alleges that he had been charged twice before with infractions and had been fired in 1982 but then reinstated without notice that his prior violations were not going to be removed from his file. On February 2, 1983, a hearing was held concerning Northern's alleged failure to properly service certain equipment. Northern allegedly did not receive proper notice of the hearing. Pursuant to the above-alleged plot, Brown controlled the hearing and ordered Northern fired. The firing of Northern was allegedly the result of Brown's animus toward unions and his effort to break the union by punishing members for union activity. Northern's firing was also allegedly in retaliation for asserting his right to a fair hearing and for filing a charge with the Illinois Department of Human Rights in connection with his 1982 dismissal.

Both plaintiffs allege that they have suffered various damages, pecuniary and emotional, as a result of the above acts of defendants. Northern also asserts that because of the corruptness of the disciplinary system it would be futile to pursue his right of appeal to the Public Law Board.

## II. Discussion

### A. Counts 1 and 3

■ Counts 1 and 3 are here treated together since they have the same legal basis and differ only in that count 1 is phrased as a class action with Pitts and Northern as the named representatives while count 3 is brought by Pitts as the duly appointed union representative of the unnamed plaintiffs. Counts 1 and 3 incorporate all of the foregoing facts and are based on that part of the Rail Passenger Service Act of 1970 ("RPSA"), 45 U.S.C. §§ 501–645, that provides:

If [Amtrak] engages in or adheres to any action, practice, or policy inconsistent with the policies and purposes of this chapter, obstructs or interferes with any activities authorized by this chapter, refuses, fails, or neglects to discharge its duties and responsibilities under this chapter, or threatens any such violation, obstruction, interference, refusal, failure, or neglect, the district court of the United States for any district in which the Corporation or other person resides or may be found shall have jurisdiction, ex-

1. The complaint asserts that the foregoing facts concerning defendants' actions apply to the class of employees working under Brown since 1981. For purposes of this motion, however, only Pitts's and Northern's individual claims (which in any case appear to duplicate the claims of the class) have been considered.

cept as otherwise prohibited by law, ... upon petition of any employee affected thereby, ... to grant such equitable relief as may be necessary or appropriate to prevent or terminate any violation, conduct, or threat.

45 U.S.C. § 547.

As is evident from the wording of the statute, § 547 provides a federal cause of action for violations of the chapter in which it appears; namely, Chapter 14, the Rail Passenger Service Act. Chapter 14 is the statute through which Amtrak took over intercity rail passenger service. The only provision in Chapter 14 imposing a duty on Amtrak in favor of its employees is § 565, which provides that the interests of rail employees affected by a discontinuance of rail service (defined to include a transfer of operations to Amtrak) in a particular location shall be protected. See, e.g., *Congress of Railway Unions v. Hodgson,* 326 F.Supp. 68 (D.D.C.1971). Since plaintiffs in this action do not allege that they were affected by any discontinuance of service, no cause of action under Chapter 14 has been stated.

Plaintiffs try to escape this obvious construction by pointing to §§ 501a(11) and (14), which establish "improvement of Amtrak's performance through ... employee incentives" and "maximization of the use of [Amtrak's] resources, including the most cost-effective use of employees" as statutory goals for Amtrak. Plaintiffs then argue that the pervasive improprieties alleged in the complaint hurt employee morale, thus hurting employee performance, thus impairing the statutorily required efficiency.

█ Quite apart from the arguments against finding legally cognizable duties in a statute phrased in terms of goals, plaintiffs' novel argument is fatally inconsistent with § 546(b) of the RPSA, which makes disputes between Amtrak and its employees subject to the provisions of the Railway Labor Act. Plaintiffs try to avoid § 546(b) by arguing that it can still apply to the typical grievance (including, presumably, single instances of improper discipline or discharge), since such cases, unlike the large-scale fraud of the type plaintiffs al-

lege, does not impair Amtrak's efficiency. That argument, however, misstates the question. The question is not whether plaintiffs' construction of § 547 *nullifies* § 546(b), it is whether plaintiffs' construction is *consistent* with § 546(b). Since § 546(b) is not qualified by language such as *"some* disputes between [Amtrak] and [its] employees", it must be read as requiring *all* such disputes to proceed under the RLA. Since plaintiffs' claims are obviously a dispute between Amtrak and its employees, they must proceed under the RLA even if they have the effect of impairing Amtrak's efficiency. Therefore, § 547 does not create a cause of action for the facts here alleged and counts 1 and 3 must be dismissed.

### B. Count 2

█ Count 2 also incorporates all of the facts set forth above and is based on those parts of the Railway Labor Act ("RLA") which provide:

First. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

Third. Representatives ... shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.

Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way ques-

tion the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization. . . .

45 U.S.C. § 152 First, Third and Fourth.

Plaintiffs' reliance on § 152 First is clearly misplaced. That subsection applies to the process of collective bargaining, see *Chicago & N.H. Ry. v. United Transportation Union*, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), not facts such as those alleged here. Plaintiffs are not complaining that Amtrak refused to settle disputes; they complain that the way Amtrak settled them violated the collective bargaining agreement. That claim does not come within § 152 First.

As to § 152 Third and Fourth, Pitts has stated no claim because the issues he seeks to raise here have already been decided by the appropriate adjustment board. "A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding." *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Moreover, Pitts was successful before the Board—it ordered his reinstatement. Therefore, Pitts's only remaining complaint is that the Board denied him back pay. That claim can only be brought as an action to review the Board's decision under 45 U.S.C. § 153 First (q), which allows parties to a Board proceeding to get review of the decision in a federal district court but states that

the findings and order of the [Board] shall be conclusive on the parties, except that the order of the [Board] may be set aside, in whole or in part, or remanded to the [Board], for failure of the [Board] to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction, or

for fraud or corruption by a member of the [Board] making the order.

45 U.S.C. § 153 First (q).

The Seventh Circuit has stated that the scope of review established by § 153(q) is "among the narrowest in the law." *Brotherhood of R.R. Signalmen v. Louisville & Nashville R.R.*, 688 F.2d 535, 537 (7th Cir. 1982). Plaintiffs do not mention § 153 First (q) in their complaint, and do not allege any improper action by the Board. Even construing the claim that "JAMES PITTS did nothing wrong but lost over a year of wages" (complaint par. 37) very broadly as a claim that the Board exceeded its jurisdiction by not awarding back pay, no factual basis for that claim appears in the complaint. Plaintiffs attempt to supply such a basis in their brief, but such a procedure is insufficient for purposes of either Fed.R.Civ.P. 12 or 56. Moreover, it appears well established that a refusal to award back pay is not an act beyond the Board's jurisdiction. *Zeviar v. Local No. 2747, Airline, Aerospace and Allied Employees, IBT*, 733 F.2d 556, 558–59 (8th Cir.1984); *Air Line Pilots Ass'n v. Eastern Air Lines, Inc.*, 632 F.2d 1321, 1323–24 (5th Cir.1980); *Epple v. Union Pacific R.R.*, 558 F.Supp. 63 (D.Col.1983).

Pitts tries to avoid the deference given Board decisions in two ways. First, he claims that because he couldn't argue to the Board the facts concerning corruption in the disciplinary process (since he didn't know those facts at the time), he didn't have a chance to litigate fully before the Board. That argument, however, mistakes facts for an issue. The issue before the Board was whether his termination should be upheld, and Pitts fully litigated that issue.

Second, Pitts relies on *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914 (7th Cir.1974), in which the Court held that a violation of § 152 was not subject to the exclusive jurisdiction of the adjustment board and could form the basis of a federal court suit. *Conrad* is distinguishable, however, because in that case the employee had not sought to utilize the grievance machinery

and therefore no adjustment board had rendered any decision on the merits of the employee's discrimination claim. Here, by contrast, the Board has decided the merits of Pitts's case by reference to the anti-discrimination provision of the collective bargaining agreement. To allow Pitts to sue under § 152 would, besides constituting wasteful litigation on an issue Pitts has already won, circumvent the statutory restrictions on judicial review of Board decisions. *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1054 (7th Cir.1983), cert. denied, — U.S. —, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

■ As to Northern, this count should be dismissed for the reason already given—the importance of not trampling on the Board's exclusive jurisdiction over interpretation of contracts. Even ignoring that reason, however, Northern's suit is either barred by the statute of limitations or must be regarded as not yet having accrued and therefore as premature. Plaintiffs concede that the 6-month period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to this action. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Northern argues, however, that although his termination and all acts complained of occurred more than 6 months before this suit was filed, the limitations period does not begin to run until his grievance is finally determined. As a general rule that is true. But accepting that argument means that the limitations period has not yet begun, which means that Northern's cause of action has not yet accrued. *Metz v. Tootsie Roll Industries*, 715 F.2d 299, 303 n. 7 (7th Cir. 1983) (dicta), cert. denied, — U.S. —, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Therefore, if it is not barred by the statute of limitations Northern's claim under count 2 is premature and must be dismissed.[2]

### C. Count 4

■ Count 4 relates solely to Pitts and alleges that he was fired in retaliation for his union activities and for his efforts to promote the productivity of the railway system, in violation of Illinois public policy. Since the federal counts are dismissed, this pendent state law claim will be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 962 (7th Cir. 1982).

### III. Conclusion

The facts alleged in the complaint are serious charges and, if true, certainly deserve to be remedied. For the reasons given above, however, this court has no power to act in these circumstances and the complaint must be dismissed.

IT IS THEREFORE ORDERED that defendants' motion to dismiss is granted and the complaint is dismissed in its entirety. This case is dismissed.

## ON MOTIONS TO RECONSIDER AND AMEND

### I. Motion for Reconsideration

■ Plaintiffs seek to reinstate count 2, and in support thereof argue the issues that count raises are different from those presented to the Public Law Board by Pitts and in fact the Board does not even have jurisdiction to hear the type of claim count 2 raises. This court does not agree. The Board exists to hear cases of wrongful termination (which is what plaintiffs allege they suffered) and to correct any errors that occur in the preceding steps of the grievance procedure. That plaintiffs allege errors are deliberately being made in a great many cases neither transforms their

---

**2.** The complaint alleges that appeal to the Board would be futile but that would be true only if something was amiss at the Board level and the complaint makes no such allegations. In their brief plaintiffs also allege denial of due process, but the law is clear that the only process which is due is that the Board act in accordance with the requirements of § 153 First (q). *Union Pa-*

*cific Railroad v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978); *Adamczewski v. Northwest Airlines, Inc.*, 530 F.Supp. 100 (N.D. Ill.1981). The complaint makes no allegations that § 153 First (q) was violated with respect to Northern, no doubt because the Board has not yet heard his claim.

claim into something else which would be within this court's jurisdiction nor shows the Board cannot (either legally or factually) carry out its error-correcting function. Plaintiffs seem to think if they just allege enough instances of wrongful conduct then this court will have jurisdiction over the whole group even though it would not have jurisdiction over any single instance. But aggregating non-federal harms does not create subject matter jurisdiction any more than aggregating individual losses satisfies the $10,000 amount requirement in a diversity case. (On the latter point, see *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).)

■ Plaintiffs also argue the Board is powerless to correct "past and potential future violations" of the RLA or the bargaining agreement. As to "potential future violations", of course the Board cannot rectify violations that have not yet occurred, but neither can this court; there is, after all, the "case or controversy" requirement of Article III of the U.S. Constitution, and it is insufficient under Article III that "an actual controversy may occur in the future; it must presently exist in fact." *J.N.S., Inc. v. Indiana*, 712 F.2d 303, 305 (7th Cir.1983); see also *Forty-Eight Insulations, Inc. v. Johns-Manville Products*, 472 F.Supp. 385, 393–94 (N.D.Ill.1979). As to "past violations", this court has already dealt with the only such claims that appear in the complaint. Plaintiffs do seek to raise violations suffered by members of a class they seek to represent, but since their own claims cannot proceed here they are not eligible to represent any such class, and certainly their own claims cannot be saved by pointing to injury suffered by someone else who is not even a party to this action.

■ Even assuming count 2 raises otherwise valid claims that are not within the Board's jurisdiction, they are barred by the statute of limitations. Whether viewed as originating in the RLA or in the collective bargaining agreement, plaintiffs' claims are governed by a six month statute of limitations. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Oglesby v. RCA Corp.*, 752 F.2d 272, 275

(7th Cir.1985); *Vallone v. Local Union No. 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 755 F.2d 520, at 521– 522 (7th Cir.1984); *Landahl v. PPG Industries*, 746 F.2d 1312 (7th Cir.1984); *Linder v. Berge*, 739 F.2d 686 (1st Cir. 1984). Since plaintiffs claim the Board did not and cannot address the claims raised in count 2, the statute of limitations was not tolled until their grievances were or are finally determined; instead, the statute began to run no later than the date of the last allegedly wrongful act. *Vallone, supra*, at 521–522. The last allegedly wrongful act relevant to either plaintiff occurred more than six months before this suit was filed, so this action is untimely.

## II. Motion to Amend

Plaintiffs also seek leave to file an amended count 2. The amended count seeks review of the Public Law Board's denial of backpay to Pitts under 45 U.S.C. § 153 First (q) on the grounds that the denial of backpay was contrary to the plain meaning of the bargaining agreement and therefore the Board exceeded the scope of its jurisdiction, and that the Board was infected with fraud and corruption. Amended count 2 also seeks to bring Northern's allegedly unlawful discharge before this court by alleging that appeal to the Board would be futile because of the same fraud and corruption Pitts alleges. Northern also argues, for the first time, the two-year statute of limitations in § 153 First (r) applies to his action rather than the six-month limitation adopted in *DelCostello*.

■ Taking these arguments in reverse order, Northern's two-year statute of limitations argument is wholly without merit. Section 153 First (r) by its terms applies only to actions seeking review of a Board decision and Northern admits he is not seeking that kind of review. And though Northern describes the application of the two-year period here as "logical", his case is obviously unlike a case seeking review of a Board decision under § 153 First (q) and

very much akin to (and therefore involves the same "considerations relevant to the choice of a limitations period" as (462 U.S. at 171, 103 S.Ct. at 2294) *DelCostello* and its progeny. Therefore, Northern's claim is governed and barred by the applicable six-month limitations period.

 That part of amended count 2 alleging Pitts's Board was, and public law boards in general are, infected by fraud and corruption is also without merit. Pitts alleges the management member of the Board that heard his case was a member of Amtrak's labor relations department and that department knew of the allegedly improper practices going on at lower management levels. He then alleges one or more of those Board members acted fraudulently or corruptly in deciding Pitts's case because he or they knew of those improper practices, and one or more of those Board members "otherwise acted fraudulently or corruptly in making the Board's decision" (par. 153). Finally, Northern alleges members of the National Railroad Adjustment Board and other public law boards have committed and continue to commit fraudulent and corrupt acts and appeal to one of these boards by Northern would be futile.

These speculative and conclusory allegations of fraud and corruption would probably not survive a motion under Fed.R. Civ.P. 9(b). More important, plaintiffs have failed to show "that the proposed amendment has substantial merit." *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983) (quoting *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979) (per curiam)); see also *Jafree v. Barber*, 689 F.2d 640, 644–45 (7th Cir.1982); *Borough of Ellwood City v. Pennsylvania Power Co.*, 570 F.Supp. 553, 556 (W.D.Pa.1983). Plaintiffs cite no cases that suggest a court should *presume* the management member of a public law board knows everything about a case the labor relations department knows, and this court sees no reason to adopt such a presumption. See *Woodrum v. Southern Ry. Co.*,

750 F.2d 876, 882 (11th Cir.1985), suggesting plaintiffs must affirmatively show someone "called this material to the carrier representative's attention." Even the theory offered earlier in plaintiffs' brief in opposition to the motion to dismiss—that the carrier representative on the Board, as a member of the labor relations department, had access to all internal memoranda relating to Pitts's case, and that some of those memoranda disclosed the improper practices that occurred—is a slim reed since what plaintiffs must show is not merely that the Amtrak board member had access but that he or she actually read such memoranda. Allowing plaintiffs to amend on such speculative grounds would greatly broaden the scope of judicial review under § 153 First (q) since almost every employee could contend his discharge was groundless or some impropriety occurred before the case got to the board, and therefore he could allege "fraud" by the Board as plaintiffs interpret that word.

 Even assuming the carrier representative on the Board *did* know of the improper practices by lower management, failing to disclose that knowledge is not "fraud or corruption" within the meaning of § 153 First (q). The reason for allowing appeal of a public law board decision tainted by fraud is to allow a district court to correct errors not preventable by the litigants themselves. A typical example of this type of misbehavior (often called "extrinsic fraud") is where one party obtains a favorable decision by bribing the judge, or perhaps more pertinent here, where the carrier representative bribes the neutral board member. In that situation, no matter what the other party argues he is doomed to lose because the case is not being decided on its merits. "Intrinsic fraud", on the other hand, is exemplified by perjured testimony [1] or misrepresentations by counsel. The other side *can* prevent that kind of misbehavior from influencing the outcome and it is not "fraud" within

---

1. The *Woodrum* case suggests if the carrier representative knows and fails to disclose that perjured testimony is being offered before the board, then that is fraud within § 153 First (q),

750 F.2d at 882. Here, however, none of the alleged improper practices took place before the Board itself.

the statute because it is not by a board member. *Merchants Despatch Transportation Corp. v. System Federation Number One Railway Employees' Department,* 447 F.Supp. 799, 803 (N.D.Ill.1978). One of the two allegations here—that defendants brought groundless charges—is clearly intrinsic fraud because Pitts could have argued the groundlessness of the charges to the Board. The other relevant allegation—that defendants "controlled" the initial hearing and review process—is arguably extrinsic, but since it happened on a level below the Board itself it is irrelevant to the quality of the Board's determination. The Board's duty is to determine the case on the merits; plaintiffs do not argue that a fired employee who shows the hearing officer reached his decision according to a superior's order rather than according to the evidence would be entitled to a Board decision in his favor even though the employer's action was in fact justified.

As to Northern, he of course is not attacking an actual board decision but alleges fraud and corruption is so widespread that appeal by him to a public law board would be futile. The only *facts* he relies on for that charge are apparently the same charges of fraud Pitts makes, and so the same reasons already given for rejecting Pitts's claim apply to Northern. Moreover, what Northern alleges is simply insufficient to establish futility. He is not alleging the kind of situation where the union refuses to process the employee's grievance, *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), or where the hearing will go against the employee no matter what the merits, *Glover v. St. Louis-San Francisco Ry.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), or where any favorable result for the employee will be ignored by the employer. *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914. All he claims is the carrier representative on his board might know of the improper practices used in his case and might fail to disclose that information to the other board members. Even ignoring the speculative nature of these claims,

Pitts's own case shows appeal in such circumstances is not futile since his Board, despite being "tainted" in the way Northern alleges, found substantially in favor of Pitts anyway.

 Finally, that part of amended count 2 alleging the Board that heard Pitts's case acted beyond the scope of its jurisdiction in denying him backpay has possible merit.[2] In *Wilson v. Chicago and North Western Transportation Co.,* 728 F.2d 963 (7th Cir.1984), a case never cited by either party and not found by this court until plaintiffs submitted the present motions, three employees were dismissed for varying reasons but the initial hearings in two of those cases were not held within 10 days as required by the collective bargaining agreement and in the third case the employee was not notified of the results of the initial hearing within 15 days as the bargaining agreement required. Even though the bargaining agreement also specified that if the time limits were not followed the charges against the employee "shall be considered as having been dismissed", a public law board upheld the dismissals. The Seventh Circuit found that in upholding the dismissals the board acted beyond the scope of its jurisdiction, and stated that "in its interpretation of the [bargaining] agreement, the Board may not depart from its clear and unambiguous provisions." 728 F.2d at 967. Though of course the facts here are different, *Wilson* does suggest Pitts's Board exceeded the scope of its jurisdiction when it denied him backpay.

 Defendants first argument against the proposed amended count 2 is procedural; it should be denied because it is inexcusably late. Defendants correctly cite *United States Labor Party v. Oremus,* 619 F.2d 683, 692 (7th Cir.1980), for the proposition that "[d]elay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district

---

**2.** Since this claim is brought pursuant to § 153 First (q), it is governed by the two-year limitations period of § 153 First (r) and thus is timely even if it did not relate back under Fed.R.Civ.P. 15(c).

court not to permit an amendment." In response, plaintiffs cite no authority but simply argue the amendment will not unduly prejudice defendants. (Plaintiffs also argue the delay is excusable because they did not know at the time they filed the original complaint that the Board was infected by fraud and corruption, but of course that lack of knowledge is no excuse as to the claim the Board exceeded the scope of its jurisdiction in denying Pitts backpay.) Fortunately for plaintiffs, however, there is in fact case law supporting their (implicit) claim that delay without prejudice is not a reason to deny amendment. In *Textor v. Board of Regents*, 711 F.2d 1387, 1391 (7th Cir.1983), the court stated that "[d]elay in presenting the amendment will be a sufficient basis for denial of leave to amend only when the delay has caused the opposing party undue prejudice."[3] Since defendants do not claim any prejudice from allowing the amendment, the inexcusable delay itself is not reason enough to not allow it.

Second, defendants argue the amendment is defective on its merits. Defendants claim it is neither unusual nor impermissible for a public law board to deny backpay despite language in the collective bargaining agreement apparently requiring backpay. However, the only precedents defendants cite from this circuit are clearly not applicable,[4] and while other circuits have reached that result, this court is bound by Seventh Circuit precedent, which here means the *Wilson* case.

Defendants try to distinguish *Wilson* by arguing the contractual provision at issue here allowed the Board some discretion and the Board's decision was in fact consistent with its requirements. However, the court declines to pass on the merits of that argument at this stage. Here it suffices that Pitts's claim that the Board exceeded the scope of its jurisdiction has potential merit and no other reason appears for denying leave to amend.

IT IS THEREFORE ORDERED that

(1) Upon reconsideration, this court adheres to its prior ruling dismissing the original complaint.

(2) Plaintiffs' motion to file an amended count 2 is granted and this case is reinstated as to that amended count but only insofar as plaintiff Pitts alleges the Public Law Board that heard his case acted beyond the scope of its jurisdiction by denying him backpay.

---

**3.** Since the *Textor* case was easily found by shephardizing the *Oremus* case, a case obviously known to both sides, this court is at a loss to understand why plaintiffs did not cite it in support.

**4.** *Balark v. Ethicon, Inc.*, 575 F.Supp. 1227, 1230 (N.D.Ill.1983), was not a Railway Labor Act case so the statutory restrictions imposed on public law boards were not involved there. The other case, *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union*, 629 F.2d 1204, 1215 (7th Cir.1980), cert. denied, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981), does state an arbitrator's award can be upheld on the basis of the "law of the shop", but again that case did not involve the restrictions imposed by § 153 First (q). Moreover, defendants have not shown either that the law of the shop allowed reinstatement without backpay, or that the agreement here involved contains enough ambiguity to require interpretation according to the law of the shop.