**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210318-U

Order filed June 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| VIRGINIA NELL REXROAT, | ) | McDonough County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-21-0318 |
| and | ) | Circuit No. 19-D-27 |
| | ) | |
| WILLIAM JOHN REXROAT, | ) | |
| | ) | Honorable William A. Rasmussen, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Hauptman and Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not abuse its discretion when closing discovery. The mistaken belief by the court and petitioner's counsel that counsel had asked the court to close discovery was not fraud on the court.

¶ 2    Respondent, William John Rexroat, appeals from the McDonough County circuit court's order dissolving the parties' marriage, and its award of maintenance to petitioner, Virginia Nell Rexroat. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On March 27, 2019, petitioner filed a petition for dissolution of marriage. She and respondent married July 18, 1970, and resided in Colchester, Illinois. Petitioner alleged irreconcilable differences caused the irretrievable breakdown of their marriage, and all attempts at reconciliation had failed. She asked the trial court to enter an order dissolving the marriage, dividing the assets and debts, and directing respondent to pay maintenance and to pay her attorney fees and costs. Respondent, through counsel, answered the petition admitting some allegations and denying others. Respondent asked the court to grant the dissolution of the marriage, order an equitable division of assets and debts, and deny petitioner's request for maintenance and attorney fees.

¶ 5    On June 4, 2019, petitioner filed a motion for gag order detailing that respondent had threatened to expose confidential information about family members on Facebook, including the parties' adult children and their spouses, if petitioner did not end the divorce proceeding. On November 22, 2019, petitioner also filed a motion for psychological evaluation and asked for temporary possession of firearms. Petitioner alleged respondent had been diagnosed with a personality disorder at the Mayo Clinic (Mayo) in Rochester, Minnesota, in December 2018. Respondent had refused treatment and exhibited inappropriate, irrational, and dangerous behavior. Mayo advised that respondent was not to have access to firearms. The firearms were placed with the McDonough County Sheriff, and respondent had to surrender his FOID card. Petitioner left the marital home on December 10, 2018. Petitioner filed two more petitions asking for a plenary order of protection and for a firearms restraining order against respondent.

¶ 6    Following a hearing on December 4, 2019, the trial court entered an order dismissing petitioner's latter three petitions without prejudice and showing the parties had reached an agreement on the petition for dissolution. The court ordered that neither party was to have contact

with the other except to exchange their dog, neither party was to bother or molest the other through any means, and the law firm of respondent's counsel was to hold his firearms and FOID card in its safe until further order of the court. Petitioner was granted $10,000 as an advance on the division of the marital estate.

¶ 7    On November 25, 2020, respondent filed a *pro se* motion for recusal of the trial judge, which was restyled as a motion for substitution for cause. His motion was denied by another judge following a hearing at which respondent complained of adverse rulings.

¶ 8    At a December 14, 2020, hearing, respondent now appeared *pro se*. The parties reported they had reached a partial agreement on various assets and debts. Respondent wanted to keep certain properties to which petitioner did not object, subject to an equitable distribution of their value. Petitioner's counsel, Alison Vawter, detailed a lengthy list of properties, accounts, assets, debts, and unpaid taxes subject to the agreement. Other property and maintenance issues were to be presented to the court later. Respondent stipulated to the agreement as detailed.

¶ 9    The hearing continued January 25, 2021. Vawter reported respondent had issued many subpoenas *duces tecum*, but she had not seen anything he had received. Vawter noted they had set values for assets and debts at the prior hearing. Respondent said he was ready for trial but withdrew his prior stipulation to the agreement detailed on December 14, 2020. Respondent asserted he had not stipulated to that agreement and accused Vawter of being unethical. The court allowed respondent a transcript of the December 14 hearing and set a new hearing date.

¶ 10    Petitioner was ill and unable to attend the February 26, 2021, hearing. The court noted respondent had filed voluminous last-minute motions. Respondent asked for a fair distribution of the parties' assets and debts as the valuations had allegedly changed after he entered the stipulation. Vawter argued that the court would need to rule on whether the December 14 agreement was

enforceable. The court agreed that they could not proceed without such a ruling. The court then ordered "discovery is cut off. There's no more discovery. That is without question." The court continued the matter for the filing of motions and a hearing.

¶ 11        The parties filed their respective motions and, at the April 14, 2021, hearing, petitioner withdrew her motion to enforce the agreement. Vawter noted the court had ended discovery, and she asked it to set a hearing on all remaining issues. The court stated,

> "I was hoping today we might be able to finalize this. Apparently, that's not
> going to happen, and we keep coming back and we keep coming back, and
> there keeps being something else every time, so, you know, at some point
> in time, we need to cut this off at the pass."

The court observed that respondent had filed new motions that same morning, and it asked respondent if there was anything other than the newly filed motions that would prevent him from proceeding to a final hearing on the dissolution. Respondent asked why the court had ended discovery. The court replied, "[s]o that we could have a trial. At some point in time, discovery has to be cut off. *** At some point in time, you have to have a trial." It stated, "[t]here has been God's plenty of time to get this ready for trial, so we're ready for trial, but you're not ready for trial because you keep filing motions." The court asked respondent if he had anything else, if so, it would give him time to file additional motions, then they would all be heard and ruled on, and the dissolution hearing would be set.

¶ 12        Vawter stated respondent had filed many motions,[1] most of which dealt with financial relief, but one asked that he be allowed to see his guns at the McDonough County Sheriff's Office.

---

[1]Respondent filed 15 motions, some with voluminous exhibits, after he began acting *pro se*, and he filed 18 subpoenas, 4 of which were served after the trial court had cut off discovery on February 26, 2021.

- 4 -

Vawter had no objection to respondent viewing the guns. The court informed respondent the dissolution of marriage hearing would finalize the division of property and debts that was the subject of the majority of his motions, and respondent had no need to file motions on that issue. The court set a date to hear and rule on all of respondent's pending motions and reiterated the matter would then be set for a final hearing.

¶ 13    On April 29, 2021, the trial court held a hearing on all pretrial motions. The court heard the motions and arguments in the order respondent wished to address them, and it ruled on all of them. At one point, based on respondent's comments, the court explained to respondent the difference between discovery and the presentation of evidence at a trial. It also explained the reason for closing discovery was to allow the matter to proceed to trial. The court explained that respondent still would be able to present evidence at trial, but the rules of evidence might prohibit admission of some evidence.

¶ 14    The following colloquy ensued:

"MR. REXROAT [(RESPONDENT)]:  Okay. Why didn't you cut off discovery in December before we started the trial?

THE COURT:  Because it wasn't asked for. Nobody asked for it.

MR. REXROAT:  Okay. Who asked for it in February?

THE COURT:  Ms. Vawter did.

MR. REXROAT:  You did?

MS. VAWTER [(PETITIONER'S ATTORNEY)]:  I did.

MR. REXROAT:  I didn't hear it in court.

THE COURT: She was sitting right there and she said, are we going to cut off discovery? And I said, yes.

- 5 -

MR. REXROAT: Okay. I'll look on the transcripts because I don't

remember that."

¶ 15            The trial court denied respondent's request to present interrogatories to opposing counsel

because discovery had been closed. The court explained that respondent could examine petitioner

when she testified, and that all division-of-property issues would occur at the final trial on the

dissolution of the marriage, not in pretrial motions. The court informed respondent it could not

hear his settlement proposal; respondent would have to discuss that with Vawter. The dissolution

of the marriage hearing was set for 9 a.m. on June 23 and 24, 2021.

¶ 16            On June 14, 2021, respondent filed a motion to continue the June 23 and 24 hearing, stating

in material part that he needed 45 days to obtain new counsel. Respondent did not notice this

motion up for a hearing.

¶ 17            On June 23, 2021, respondent did not appear for the 9 a.m. hearing. He filed a motion to

continue at 9:18 a.m. Petitioner objected. The court observed respondent did not file his motion

until after the hearing was to have begun. Respondent claimed to have a migraine. The court denied

the continuance. Vawter informed the court she had received two e-mails from respondent that

morning:

> "The first one was sent at 9:22 a.m. from jgrexroat@corncast.net, and it says
>
> A. Vawter, I have just sent a motion to continue. If they don't approve it,
>
> well, I guess, go ahead without me. I wouldn't know what to do anyway and
>
> with you (sic) ex parte meeting on February 26th, it may have already been
>
> predestined anyway and signed John, and then the second email I received
>
> was at 9:26 a.m., and Mr. Rexroat apparently responding to me with respect
>
> to questions. I asked him about his ability to attend sports events recently

- 6 -

despite his migraines. He indicated that as for the sports events, I haven't been to any since June 7th. I'm going out to walk the dog and going back to bed. That's the last communication I've had from him, Your Honor." The court responded, "I don't know what he's talking about any ex parte communications because there have not been any, but with his saying you might as well go ahead, that is exactly what we will do."[2]

¶ 18    Petitioner testified and Vawter tendered supporting exhibits. The court orally ruled there were good grounds for the dissolution of the marriage. It dissolved the marriage and detailed the division of property and debts. The court awarded the firearms and ammunition to petitioner with instructions to auction them off and retain the proceeds less expenses. The court noted both parties would receive approximately $250,000 in assets. It ordered respondent to pay maintenance to petitioner in the amount of $66.37 per week commencing on July 1, 2021. The court entered a written judgment for dissolution on June 29, 2021, including additional details that were not part of its oral order.

¶ 19    Respondent filed a timely notice of appeal on July 22, 2021.

¶ 20                                II. ANALYSIS

¶ 21    Respondent argues the trial court erred in closing discovery when no request had been made to do so. Petitioner argues the court did not abuse its discretion when ending discovery.

---

[2] Respondent claims in his reply brief that the court held an *ex parte* meeting with Vawter on February 26, 2021. Respondent has not provided any record to support this claim. He did not raise this claim in the circuit court, and he has not raised an argument regarding an *ex parte* communication in his briefs. "Issues not raised in either the trial court or the appellate court are forfeited." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (citing *WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173, ¶ 23).

¶ 22        A trial court's discovery decisions are reviewed for abuse of discretion. *People v. Williams*, 209 Ill. 2d 227, 234 (2004) (citing *People v. Fair*, 193 Ill. 2d 256, 265 (2000)). Illinois Supreme Court Rule 201 provides:

> "(1) Protective Orders. The court *may at any time on its own initiative*, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.
>
> (2) Supervision of Discovery. Upon the motion of any party or witness, on notice to all parties, *or on its own initiative without notice*, the court may supervise all or any part of any discovery procedure." (Emphases added.) Ill. S. Ct. R. 201(c)(1-2) (eff. July 1, 2014).

Further, "[t]he trial of a case shall not be delayed to permit discovery unless due diligence is shown." Ill. S. Ct. R. 201(f) (eff. July 1, 2014).

¶ 23        The record shows the *pro se* respondent was not well acquainted with trial procedure and the rules of evidence. The trial court attempted to educate respondent about the difference between discovery and the presentation of evidence at a hearing. Respondent served subpoenas after he knew discovery had been closed. The court gave respondent reasonable opportunities to file any motion respondent felt needed to be filed, and the court ruled on all his motions. We hold the trial court did not abuse its discretion when closing discovery.

¶ 24        Respondent argues the trial court stated petitioner's counsel had asked to end discovery, and counsel agreed, which caused "fraud on the court by both." He argues the court's orders and judgment are void. Respondent argues counsel knowingly made a false statement to the court. Ill.

R. Prof'l Conduct (2010) R. 3.3(a)(1) (eff. Jan. 1, 2010) ("A lawyer shall not *knowingly* \*\*\* make a false statement of fact or law to a tribunal.") (Emphasis added.) Petitioner argues the court and Vawter's belief that she asked to close discovery was harmless error, not fraud.

¶ 25        "A judgment entered by a court, otherwise exercising proper jurisdiction, is open to collateral attack where fraud existed in its procurement." *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 52 (citing *Doctor's Associates, Inc. v. Duree*, 319 Ill. App. 3d 1032, 1043 (2001)). "Only fraud that is extrinsic, as opposed to intrinsic, will render a judgment unenforceable." *Id.* Extrinsic fraud prevents a court from acquiring jurisdiction or gives the court colorable jurisdiction. *Leroy K.D. v. Nicole B.*, 2021 IL App (3d) 200010, ¶ 37 (citing *Massie v. Minor*, 307 Ill. App. 3d 115, 119 (1999)). The classic example of extrinsic fraud is where the unsuccessful party had been prevented from fully presenting his or her case, such as where the party had been kept away from the courthouse, or where the party had no knowledge of the suit. *Id.* "[J]udgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties." *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979) (citing *Wood v. First National Bank*, 383 Ill. 515, 522 (1943)). A circuit court's order is not rendered void by error or impropriety. *Vulcan Materials Co. v. Bee Construction,* 96 Ill. 2d 159, 165 (1983) (citing *Farlow v. Oliver*, 29 Ill. 2d 493, 499(1963)).

¶ 26        "The party attacking the judgment on the ground of extrinsic fraud carries the burden of supporting his claim with adequate evidentiary support; thus, it is a factual determination given deference on review." *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 52 (citing *Doctor's Associates*, 319 Ill. App. 3d at 1043). In the instant case, respondent does not claim extrinsic fraud occurred or that the trial court did not have personal jurisdiction over the parties or subject matter

jurisdiction over the dissolution of marriage proceeding. The court had both personal and subject matter jurisdiction. Respondent had notice of the proceedings, and he was not prevented from fully presenting his case. Thus, we conclude no extrinsic fraud occurred below, and the trial court's orders are not void and unenforceable.

¶ 27 Intrinsic fraud occurs after a court acquires jurisdiction, and includes, for example, false testimony or concealment. *Leroy K.D.*, 2021 IL App (3d) 200010, ¶ 37 (citing *Massie*, 307 Ill. App. 3d at 119). Intrinsic fraud "goes to the actual merits of the case and does not preclude a party from raising a claim or defense, or being aware of and attending the proceeding." *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 716 (2010) (citing *Doctor's Associates*, 319 Ill. App. 3d at 1043). Intrinsic fraud includes "perjured testimony or misrepresentations by counsel." *Pitts v. National R.R. Passenger Corp.*, 603 F. Supp. 1509, 1517 (N.D. Ill. 1985). The opposing party can prevent such misbehavior from influencing the outcome of the litigation. *Id.*

¶ 28 Petitioner acknowledges the record does not show Vawter asked the court to end discovery. However, the record does not support that Vawter knowingly made a false statement to the court that she had asked it to close discovery. Importantly, the court ended discovery at the February 26, 2021, hearing. The court and Vawter's subsequent error at the April 29 hearing, where they agreed Vawter asked to close discovery on February 26, did not affect the merits of the instant case. Respondent does not claim Vawter made a misrepresentation that affected the merits of the case, and he does not claim perjured testimony was given or that there had been any concealment. Respondent was given a full opportunity to present any pretrial motions he felt were necessary and have the court rule on them. Respondent voluntarily failed to appear for the evidentiary hearing on the petition for dissolution of marriage. Thus, we hold no intrinsic fraud occurred below. Further, the court's unsubstantiated statement that Vawter had asked it to close discovery was made two

months after the court properly closed discovery on its own initiative; therefore, that error was harmless.

¶ 29                               III. CONCLUSION

¶ 30         For the foregoing reasons, we affirm the judgment of the circuit court of McDonough County.

¶ 31         Affirmed.